James MORRISON, Plaintiff,

v.

Karl DAVIS, et al., Defendants.

No. C2–97–1305.

United States District Court,
S.D. Ohio,
Eastern Division.

March 28, 2000.

Alphonse Adam Gerhardstein, Laufman & Gerhardstein, Cincinnati, OH, for plaintiff.

Todd Marti, Columbus City Attorney's Office, Carol Anne Hamilton O'Brien, John H. Jones, Ohio Attorney General–2, Corrections Litigation, Columbus, OH, William R. Kirschner, US Department of Justice, Civil Division/Federal Programs, Washington, DC, for defendant.

## OPINION & ORDER

MARBLEY, District Judge.

This matter comes before the Court on Plaintiff's Motion for Attorney Fees and Expenses. The Plaintiff moves the Court for an award of attorney fees and expenses in the amount of $137,395.21 against Defendants Karl Davis and Jeffery Felts for services provided in this case. Plaintiff also challenges the constitutionality of 42 U.S.C. § 1997e, the Prison Litigation Reform Act of 1995 ("PLRA"), as it limits attorney fees awards. For the following reasons, the Court finds that § 1997e(d) is constitutional and **GRANTS** Plaintiff's Motion for Attorney Fees and Expenses in the amount of $22,499.

### I. Introduction

Plaintiff James Morrison was incarcerated in 1991 for an aggravated drug trafficking. He is currently serving a sentence of two and a half to ten years. In March of 1997, Plaintiff was housed at the Ross Correctional Institute ("RCI"), where Defendants are currently employed as corrections officers. On December 2, 1997, Plaintiff filed suit, under 42 U.S.C. § 1983 alleging that he was beaten by a correction officer at the Ross Correctional Institute

("RCI") on March 31, 1997, in violation of his rights under the Eighth Amendment to the United States Constitution. On July 2, 1999, the jury returned a verdict in favor of Plaintiff, finding that Defendants Felts and Davis used excessive force and violated their duty to protect Plaintiff. The jury awarded Plaintiff a total of $15,000 ($12,000 in actual damages and $3,000 in punitive damages).

As the prevailing party in the § 1983 action, Plaintiff petitions under 42 U.S.C. § 1988 for an award of attorney fees and litigation costs and expenses in the amount of $137,395.21. Pursuant to § 1988, Plaintiff claims that he is entitled to recover attorney fees and litigation expenses for all time reasonably spent on this matter. Plaintiff documents that his attorney, Mr. Gerhardstein, spent 149.89 hours on the case and that Ms. Branch, Mr. Gerhardstein's associate, allocated 533.49 hours.[1] Plaintiff requests hourly rates of $250 for the services of Mr. Gerhardstein and $180 for Ms. Branch.

Moreover, Plaintiff acknowledges that the PLRA lowers the amount of attorney fees permitted to be recovered by prison inmates following a successful civil rights suit. Plaintiff argues, however, that the PLRA's restraints are an unconstitutional exercise of congressional power. Specifically, Plaintiff claims that the PLRA is "an unconstitutional denial of rights secured by the equal protection clause."

Defendants counter that the PLRA is constitutionally sound because it is rationally related to the government interests of limiting excessive fee awards in prisoner cases and of limiting the disruptive impact of prison litigation. Defendants urge that Plaintiff's Motion should be denied for two reasons. First, assuming that the PLRA fee cap is constitutional, the amount that

Plaintiff seeks is far in excess of what the PLRA allows. Second, even if the PLRA fee cap is constitutionally debatable, Defendants aver that other provisions of the PLRA limit the hourly rates that may be used in calculating the fee awards in prisoner cases. Finally, Defendants claim that § 1997e(d)(1)(B)(i) of the PLRA, requires fees to be proportional to the relief that the plaintiff obtains. In this case, Plaintiff recovered against only two of the three Defendants, and, therefore, Defendants contend that the attorney fees award should be reduced by one-third.

Pursuant to 28 U.S.C. § 2403(a), this Court has granted the United States' Motion to Intervene. The United States argues that no fundamental right or suspect classification is involved in this case, and that a rational basis standard applies. Under the rational basis analysis, the United States argues that Congress has a legitimate interest in discouraging frivolous lawsuits by prisoners, standardizing fee rates, and protecting states and local jurisdictions from the imposition of excessive fees. Therefore, the statute is rationally related to that legitimate government interest. The United States urges the Court to deny Plaintiff's request to declare the PLRA's attorney fees provisions unconstitutional.

## II. Analysis

### A. Entitlement to Fees

■ Section 1988 provides, in relevant part: "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...." 42 U.S.C. § 1988(b).[2] The purpose of § 1988 "is to ensure effective access to the judicial process for per-

---

1. The total number of hours billed for services rendered is 688.83, which includes 5.45 hours allocated by Mr. Gerhardstein's law clerk.

2. Plaintiff's status as a prevailing party is undisputed. A prevailing party is one who "obtain[s] at least some relief on the merits of his claim." *Farrar v. Hobby,* 506 U.S. 103, 111,

113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Plaintiff's entitlement to attorney fees and expenses of some sort also is undisputed. The Court, therefore, must turn only to the questions of which statutes govern Plaintiff's recovery of attorney fees and expenses and whether the PLRA is inherently constitutional.

sons with civil rights claims, and to encourage litigation to enforce the provisions of the civil rights acts and constitutional civil rights provisions." *Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3d Cir.1998). Therefore, although the decision to award fees is left to the trial court's broad discretion, the court's discretion "must be guided by the statutory presumption that fees should be awarded to successful plaintiffs absent unusual situations." *Williams v. Hanover Hous. Auth.*, 113 F.3d 1294, 1300 (1st Cir.1997) (citation omitted).

Under the mandate of § 1988, a prevailing party is entitled to "a reasonable attorney's fee." 42 U.S.C. § 1988(b). In determining the reasonableness of a fee, a court customarily applies the "lodestar" formula. *See Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Under the lodestar approach, the proper starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This figure is presumed to be a reasonable fee; however, the court may adjust it upward or downward based on collateral considerations. *See id.* at 434, 103 S.Ct. 1933.

■ In determining the appropriate hourly rate, consistent with the paradigm set forth in § 1988, a court must determine the "prevailing market rates in the relevant community" for services rendered. *See Blum v. Stenson*, 465 U.S. 886, 895–96 & n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Courts have determined that "the actual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate." *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1326 (D.C.Cir.1982). The Court of Appeals for the Fourth Circuit has found that:

> [t]he prevailing market rate may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market.

*See Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir.1987) (citations omitted).

Section 1988 governs the award of a fee in civil rights cases under § 1983, but in prisoner civil rights cases there is an additional consideration. *See Clark v. Phillips*, 965 F.Supp. 331, 333 (N.D.N.Y.1997). In prisoner civil rights cases, court must also assess the availability and amount of fees pursuant to § 803 of the PLRA, 42 U.S.C. § 1997e. Section 1997e provides:

> (d) Attorney's Fees
>
> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 ... such fees shall not be awarded, except to the extent that—
>
> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 ...; and
>
> (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
>
> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.
>
> (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25%) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150% of the judgment, the excess shall be paid by the defendant.
>
> (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150% of the hourly rate established under section 3006A of Title 18, United States Code, for payment of court-appointed counsel.

(4) Nothing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than the defendant pursuant to section 1988....

42 U.S.C. § 1997e(d). When reviewing an application for an attorney fees in prisoner civil rights suits, both § 1988 and 42 U.S.C. § 1997e must be analyzed.

The Court must engage in two levels of analysis in this case. First, it will consider whether the fee-limiting and fee-shifting provisions of § 1997e(d) are consistent with Equal Protection clause of the Fifth Amendment of the Constitution. Second, it will consider the proper fee award under §§ 1988 and 1997e.

### B. Constitutionality of 42 U.S.C. § 1997e(d)

As a threshold consideration, the Court must determine whether § 1997e(d) denies Plaintiff and other prisoner litigants who have filed § 1983 actions Equal Protection under the Fifth Amendment to the Constitution.

Plaintiff claims that the PLRA is unconstitutional because it violates the Equal Protection Clause of the Fifth Amendment. In particular, Plaintiff asserts that the PLRA burdens prisoners' fundamental right of access to the courts.[3]

In their Memorandum in Opposition, Defendants contend that because § 1997e(d)(2) neither impairs fundamental rights nor relies upon suspect classifications, it is subject only to rational basis review, which Defendants contend the statute easily passes. Defendants argue that by enacting § 1997e(d)(2), Congress addressed what it believed to be problems in prisoner litigation, such as lawyers who had little disincentive to take even the most frivolous cases; and the disruptive impact that prisoner litigation has on the prison system, including the diversion of prison staff's time to deal with litigation.

The United States, an intervenor, avers that the PLRA was borne by Congress's concern over the volume of prisoner litigation, and argues that Congress did not infringe upon any prisoner's fundamental right of access to the courts by creating the PLRA. Rather, the United States contends, Congress intended the PLRA to give prisoners the same economic disincentives, such as contingency fees, to filing frivolous cases that other civil litigants face.[4] The United States maintains, therefore, that strict scrutiny is improper, and that the correct standard is rational basis. Citing *Heller v. Doe*, 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993), the United States maintains that the proper application of the rational basis test negates a statute only if there is no conceivable basis to support it; and Plaintiff fails to negate every conceivable basis on which the PLRA stands.[5]

---

**3.** Citing *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), Plaintiff argues that the right of access to the court is fundamental. With that argument, Plaintiff appears to implicate strict scrutiny, which is proper when a law draws a distinction that is based on a suspect classification or that burdens a fundamental right. Plaintiff thereby invokes a fundamental rights argument that raises the question of whether heightened scrutiny is required. Plaintiff contends, however, that the PLRA cannot even survive the lowest level of equal protection scrutiny, or rational basis. Plaintiff does not address fully strict scrutiny review.

**4.** It should be noted that § 1997e provides for attorney fees up to the amount of 150% of the judgment. 42 U.S.C. § 1997e(d)(2). This fee arrangement is far more than any civil attorney's usual contingency fee.

**5.** The United States also argues that, in creating the fee-shifting scheme of § 1988, Congress granted civil rights plaintiffs a benefit—not a constitutional right. Thus, Congress is entitled to place rational limitations on the extent of fee shifting, or even eliminate fee shifting, without implicating anyone's constitutional rights. Moreover, the United States contends, there is no constitutional requirement that a civil litigant-prisoner have his or her attorney fees paid by any standard other than the one set forth in § 1997e(d).

The Court must consider two distinct issues in this case: (1) whether rational basis or strict scrutiny is the correct standard by which to evaluate the PLRA; and (2) whether the PLRA satisfies the applicable standard.

### 1. Proper Standard of Review

Strict scrutiny requires that the challenged law be "suitably tailored to serve a compelling . . . [government] interest." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). When a law involves a suspect classification (*i.e.*, race or national origin), or a fundamental right protected by the Constitution (*i.e.*, the right to free speech), this level of review is triggered. *See id.* On the opposite end of the spectrum, rational basis is the least demanding standard of review. *See id.* Under the rational basis test, the classification made by the challenged law is presumed to be valid and need only relate rationally to a legitimate governmental purpose. *See id.*

As prisoners are not a suspect class, the next issue to consider is whether the PLRA violates a prisoners fundamental right.[6] Strict scrutiny is not appropriate where "[p]risoners still possess what the Supreme Court has said the Constitution requires: 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' " *Zehner v. Trigg*, 133 F.3d 459, 463 (7th Cir.1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 345, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Courts that have held the PLRA unconstitutional have not invoked strict scrutiny. *See McLindon v. Russell*, No. C–1–95–676, slip op. (S.D.Ohio, Dec. 13, 1999) (Sherman, Mag.); *Walker v. Bain*, 65 F.Supp.2d 591 (E.D.Mich.1999) (Komives, Mag.). The Supreme Court has held that the right of access to the courts requires authorities to provide prisoners with "[t]he tools . . . that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The scope of the right of access, however, is quite limited. Prisoners need only have "the minimal help necessary" to file legal claims. *Id.* at 359, 116 S.Ct. 2174. The Constitution does not mandate "that prisoners (literate or illiterate) be able to conduct generalized research, but only that they be able to present their grievances to the courts. . . ." *Id.* Thus, the assistance of counsel and counsel's compensation in a prisoner's civil litigation is not within the scope of the fundamental right of access to the courts.[7]

In this case, Plaintiff has not demonstrated that the contested provisions of the

---

6. Neither have the poor been considered a suspect class, *see Harris v. McRae*, 448 U.S. 297, 323, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) ("[T]his Court has held repeatedly that poverty, standing alone, is not a suspect classification.") (citation omitted), as poverty is a mutable characteristics like race or national origin. *See, e.g., City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 438 & 440–41, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (discussing the immutable nature of personal characteristics that can trigger strict scrutiny, or at least heightened scrutiny).

Plaintiff's argument that the PLRA is an attack on an unpopular group is unavailing, therefore, in triggering strict scrutiny. As the Supreme Court held in *Romer v. Evans*, 517 U.S. 620, 622, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) "[a] law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or

works to the disadvantage of a particular group, or if the rationale for seems tenuous."

7. The Supreme Court has held "[a]n indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Lassiter v. Department of Soc. Servs. of Durham County*, 452 U.S. 18, 26–27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). The *Lassiter* court noted that, "[a]s a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." *Id.* at 26, 101 S.Ct. 2153. In *Lassiter*, the Court held that due process clause of the Fourteenth Amendment did not require the trial court to appoint counsel for the petitioner in a termination of parental rights proceeding. *Id.* at 29–34, 101 S.Ct. 2153. Thus, it would stand beyond reason for a prisoner to claim any right to counsel in a civil case, even if he claims it as an extension of his right of access to the courts.

PLRA have denied him a "reasonably adequate opportunity" to present his claims to the courts.[8] Plaintiff has failed to demonstrate that the PLRA burdens a fundamental right. The Court concludes that this case falls within rational basis review.

## 2. PLRA's Rational Relationship to a Legitimate Government Interest

■ The rational basis standard " 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' " *Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (quoting*FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). The Supreme Court has urged the judiciary not to act as a " 'superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' " *Id.* (quoting *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (per curiam)). A court must uphold the challenged classification " 'if there is any reasonably conceivable state of facts that could provide a rational basis' " for it. *Id.* at 320, 96 S.Ct. 2513 (quoting *FCC v. Beach Communications*,

508 U.S. at 313, 113 S.Ct. 2096). Under a rational basis review, " '[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.' " *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)). Thus, a court is compelled to accept a "legislature's generalizations," even if "there is an imperfect fit between means and ends." *Id.* at 321, 113 S.Ct. 2096.

### a. Legislative History

■ This Court recognizes that rational basis review does not require the legislature "to produce evidence to sustain the rationality of a statutory classification." *Heller*, 509 U.S. at 320, 113 S.Ct. 2637. In fact, the legislature is not required " 'actually [to] articulate at any time the purpose or rationale supporting its classification.' " *Id.*(citations omitted) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992)). In an abundance of caution, however, the Court has examined the Congressional Record and finds that Congress intended the PLRA to prevent prisoners from filing frivolous § 1983 suits.[9] For the Court to engage in further,

8. At most, Plaintiff has shown that the PLRA may have some impact on a prisoner's ability to obtain particular counsel who expect to be compensated at a particular rate. Such an argument reaches far beyond any fundamental right to counsel or fundamental right of access to the courts that the Supreme Court has defined. *See Lewis v. Casey*, 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ("To demand conferral of ... sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires"). Furthermore, Plaintiff has failed to show how the PLRA has actually prevented him from gaining effective legal representation—placing his argument on even more hypothetical grounds as to the prospective effect of the PLRA and thereby skirting the bounds of question of whether the Plaintiff has suffered an actual injury at the hands of the PLRA attorney fees provision. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ("It is the role of courts to provide relief to claimants, in individual or class actions, who have

suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.").

9. The PLRA and frivolous suits by prisoners was the subject of debate many times in the Congress throughout 1995 and 1996. *See* 142 CONG. REC. S10576 (daily ed. Sept. 16, 1996) (statement of Sen. Abraham); 142 CONG. REC. S3703 (daily ed. April 19, 1996) (statement of Sen. Abraham); 141 CONG. REC. S14413 (daily ed. Sept. 25, 1995) (statement of Sen. Dole); 141 CONG. REC. S14316 (daily ed. Sept. 25, 1995) (statement of Sen. Abraham); 141 CONG. REC. S7523 (daily ed. May 25, 1995) (statement of Sen. Dole); 141 CONG. REC. H1038 (daily ed. Feb. 1, 1995) (statement of Rep. Hoke). Repeatedly, Congress expressed concern about prisoners taking advantage of the federal court system. As a result, the PLRA attorney fees cap was passed to even the field of litigation between incarcerated and non-incarcerated § 1983 litigants and create a disincentive for frivolous lawsuits. *See* 141 CONG. REC. S14413 (daily ed. Sept. 25, 1995) (statement of Sen. Dole).

more protracted analysis of the legislative history would be inconsistent with the stated principles of rational basis review. The Court is satisfied by its examination of the Congressional Record that Congress created the PLRA to correct perceived abuses of § 1983 litigation by prison inmates.

### b. Legitimacy of the Government's Interest in Prison Litigation

The Supreme Court has held that some legislative objectives are so patently inappropriate as not to withstand even rational basis review. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The legislature may not set out with " '[a] bare . . . desire to harm a politically unpopular group.' " *See id.* (quoting *United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 534, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973)). Moreover, the legislature cannot draw classifications "for the purpose of disadvantaging the group burdened by the law." *See Romer v. Evans*, 517 U.S. 620, 633, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (citation omitted). In *Romer*, for example, Supreme Court struck down an amendment to the Colorado constitution that prohibited "all legislative, executive or judicial action at any level of state or local government designed to protect the named class . . . refer[red] to as homosexual persons or gays and lesbians." *Id.* at 624, 116 S.Ct. 1620. The Court found that the amendment was "a status-based enactment divorced from any factual context from which [the Court] could discern a relationship to legitimate state interests." *See id.* at 635, 116 S.Ct. 1620.

Plaintiff likens this case to *Romer* and urges the Court to void the PLRA on the very same grounds. The expansive reading of *Romer* that Plaintiff urges is inconsistent with Supreme Court jurisprudence. *Romer* dealt with a statutory provision that, on its face, baldly discriminated against a group based on their arguably immutable sexual identity. The Seventh Circuit distinguished *Romer* from prisoner's challenges to the PLRA. *See Zehner v. Trigg*, 133 F.3d 459, 464 (7th Cir.1997). The *Zehner* court observed that the statute at issue in *Romer* "forbade any state or local government entity to enact any measure to protect or favor gays and lesbians," and thereby created a broad restriction on that group that made it " 'more difficult [for them] . . . than for all others to seek aid from the government.' " *Id.* at 463–64 (quoting *Romer*, 517 U.S. at 634, 116 S.Ct. 1620). The court held that the contested provision of the PLRA did not create the same kind of "across the board restriction on access to governmental assistance." *Id.*[10] Rather, the contested provision created a "narrow restriction" on the means of obtaining relief that did not raise "the same 'inevitable inference' of animus as the Colorado" statute did. *Id.* (quoting *Romer*, 517 U.S. at 634, 116 S.Ct. 1620). This Court reiterates *Zehner's* distinction and finds that the PLRA's attorney fees provisions do not restrict prisoners' access to the courts in the same way that the statute in *Romer* restricted all gays, lesbians and bisexual's access to all governmental assistance. The Court rejects Plaintiff's extension of *Romer* and holds that Congress has a legitimate interest in limiting frivolous lawsuits filed by prisoners.

### c. Rational Relationship of the Means to the Ends

This Court cannot strike down the PLRA merely on the basis that " 'it results in some inequality' " between incarcerated and non-incarcerated § 1983 litigants. *Heller*, 509 U.S. at 321, 113 S.Ct. 2637 (quoting *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491

---

Rather than disadvantage prisoners relative to other litigants, Congress expressed the need to diminish the unfair advantage prisoners had over other litigants (in resources and time to litigate), as well as end perceived abuses of the justice system. *See id.*

10. The *Zehner* case involved a challenge to § 1997e(e) which requires that there be a prior showing of physical injury for a prisoner to bring a federal civil action for mental or emotional injury suffered while in custody.

(1970) (citation omitted)). The Supreme Court recognizes that "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations. . . ." *Id.* (quoting *Metropolis Theater Co. v. Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 57 L.Ed. 730 (1913)). In this case, Plaintiff cannot prevail merely by showing that there is a better or more exact way to reach the issue of prisoners filing frivolous lawsuits than a cap on attorney fees. Rather, Plaintiff must show that the current version of the PLRA creates no conceivable rational relationship between the means (*i.e.,* attorney fees) and the ends (*i.e.,* reducing the number of frivolous lawsuits filed by inmates). To deem the PLRA unconstitutional, this Court must find that "it 'rests on a grounds wholly irrelevant to the achievement of the State's objective.'" *Heller,* 509 U.S. at 324, 113 S.Ct. 2637 (quoting *Holt Civic Club v. Tuscaloosa,* 439 U.S. 60, 71, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978) (citation omitted)). If the question of rational relationship is "'at least debatable,'" then the PLRA must survive the rational basis test. *Id.* at 326, 113 S.Ct. 2637 (quoting *Western & Southern Life Ins. Co. v. State Bd. of Equalization of Cal.,* 451 U.S. 648, 674, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981) (citation omitted)).

Plaintiff argues, albeit tautologically, that a prevailing party under § 1988 cannot be a source of a frivolous claim. Plaintiff reasons that the fact that he won the case logically indicates that his claim was not frivolous. To limit the fee award of successful § 1983 claimants who are prisoners bears no rational relationship to the asserted governmental purpose of reducing frivolous causes of action brought by prisoners.

Based on the presumed validity of laws subject to rational basis review, the courts in *Madrid v. Gomez,* 190 F.3d 990 (9th Cir.1999); and *Collins v. Algarin,* No. 95-4220, 1998 WL 10234, 1998 U.S. Dist. LEXIS 83, at *23–*25 (E.D.Pa. Jan. 9, 1998), *aff'd en banc by an equally divided court sub nom. Collins v. Montgomery County Board of Prison Inspectors,* 176 F.3d 679 (3d Cir.1999), reasoned that the means chosen by Congress in the PLRA to meet the ends of decreasing prisoners' frivolous lawsuits are constitutional because: (1) it is a legitimate goal to deter the filing of prisoner lawsuits; and (2) it is conceivably based in Congress's belief that prisoners file frivolous suits and that the pattern should be discouraged. *Madrid,* 190 F.3d at 996; *Collins,* 1998 WL 10234, 1998 U.S. Dist. LEXIS 83, at *25–*26, *aff'd en banc by an equally divided court, sub nom.,* 176 F.3d at 686 (affirming the district court's decision "to the extent that it upheld" the provision of the PLRA that limits fees to 150% of the judgment). The *Madrid* and *Collins* courts found a rational basis to support the PLRA—necessarily concluding that the PLRA is rationally related to a governmental purpose.

Rational basis is by no means a rubber stamp. The Supreme Court has held that "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citation omitted); *see also Bannum v. City of Louisville,* 958 F.2d 1354, 1360 (6th Cir.1992) (citations omitted). ("[T]he Court's rational relationship review in *City of Cleburne* has been termed an 'exacting' rational relationship standard, in that the Court, finding the regulations at issue unconstitutional as applied, held that the desire to impede a politically unpopular group is not a legitimate state interest.") If the legislative purpose in passing the PLRA was solely to disadvantage prisoner litigants as further punishment for their status, then this Court would not endorse such animus. *See City of Cleburne,* 473 U.S. at 446, 105 S.Ct. 3249. Plaintiff, however, has not established that the PLRA has such a goal.

Two courts have held that the PLRA does not pass the constitutional muster under a rational basis analysis. *Walker v. Bain,* 65 F.Supp.2d 591, 604 (1999) (Ko-

mives, Mag.) (quoting *Westberry v. Fisher*, 297 F.Supp. 1109, 1115 (D.Me.1969)); *see also McLindon v. Russell*, No. C–1–95–676, slip. op. at 19 (S.D.Ohio Dec.13, 1999) (Sherman, Mag.) (concurring with the *Walker* court). The *Walker* and *McLindon* courts found no rational relationship between the goal of protecting the public purse and the means of arbitrary discrimination against prisoners. *Walker*, 65 F.Supp.2d at 604–05; *McLindon*, No. C–1–95–676, at 19. Both courts concluded that Congress chose to award fees to successful civil rights litigants by enacting § 1988 and that Congress cannot deny fees to some successful civil rights plaintiffs simply because they are prisoners. *Walker*, 65 F.Supp.2d at 604–05; *McLindon*, No. C–1–95–676, at 19. These Courts rejected strict scrutiny analysis, but reached a different conclusion on the question now before this Court.

■ This Court disagrees with the conclusions in *Walker* and *McLindon*. This Court finds that although the PLRA does single out prisoners for a particular burden in § 1983 actions, Congress's goal in placing that burden on prisoners was to bring prisoners' litigation incentives on par with, not below, non-incarcerated litigants. The principles of equal protection do not prevent Congress from burdening prisoners in this way. Thus, Plaintiff's arguments fit better in the legislative rather than the judicial forum. *See City of Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249 ("[T]he Constitution presumes that even improvident decisions will eventually be rectified by democratic processes.").[11] The

burden that the PLRA imposes does not fetter prisoners' abilities to recover under § 1983, nor does it prevent the attorney from engaging in a fee arrangement independent of what can be recovered from the defendant. As the Ninth Circuit noted in *Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir.1999), "[t]he PLRA does not restrict access to the courts; at most, it restrict prisoners' access to the most sought-after counsel who insist on their going rate for representation." *Id.*[12]

The Sixth Circuit has held that the Congress's goal of creating disincentives for prisoners to file frivolous claims "undoubtedly m[et] the rational basis test" in the filing fee context. *Hampton v. Hobbs*, 106 F.3d 1281, 1286–87 (6th Cir.1997). Filing fees and attorney fees are both elements of the calculus that any potential litigant undertakes in deciding whether litigation is worth the economic risk. Although Plaintiff has argued effectively that there may be better means to Congress's ends, Plaintiff has not distinguished filing fees from attorney fees so much as to show the former to be a valid restriction but the latter to be invalid.

In sum, Plaintiff has failed to negate every conceivable basis upon which the PLRA may stand. The PLRA certainly sets apart the prison population, but does not do so illegitimately. The Court, therefore, finds that the PLRA is constitutional.

### C. Amount of the Fee Award

Few courts have addressed § 1997e(d) as it relates to attorney fees. One court

---

**11.** Plaintiff argues that there is a great deal of animus underlying the PLRA. Moreover, Plaintiff contends, the attorney fees cap has no other purpose than to prevent prisoner litigants from gaining effective representation in § 1983 actions. Plaintiff marshals a great deal of statistical and anecdotal evidence to show that attorneys are less likely to take prisoners' § 1983 action because of the PLRA fee cap. There is also statistical evidence, Plaintiff suggests, to show that Congress's concerns about the high tide in prisoner litigation was unfounded, at worst, and premature, at best, as there was an ebb in the flow

of such litigation even before the PLRA was passed.

**12.** The Supreme Court has recognized that the legislature did not intend to provide a windfall to a § 1983 litigant's attorney. *See Farrar v. Hobby*, 506 U.S. 103, 115, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Thus, all attorney fees sought under § 1988 are limited to some standard of reasonableness. The PLRA may be Congress's further constraint on what is reasonable for prisoners' attorneys, in light of perceived abuses by prisoners of the courts.

has determined that the suitable approach is to harmonize the expansive approach of § 1988 with the more specific requirements of § 1997e(d). *See Clark v. Phillips*, 965 F.Supp. 331, 333–38 (N.D.N.Y. 1997).

This Court will take a progressive step-by-step approach to evaluating the potential fee award under § 1997e(d). The Court has already determined that the Plaintiff is a prevailing party under § 1988. *See* 42 U.S.C. § 1997e(d)(1). Second, this Court must calculate the total fee award using the lodestar method in § 1988. *See id.* Third, this Court must determine whether the amount of the fee is proportionate to the court ordered relief for the violation, or if the fee was directly and reasonably incurred in enforcing the relief ordered for the violation. *See* 42 U.S.C. § 1997e(d)(1)(B). Finally, if a monetary judgment is awarded, the Court, in accordance with § 1997e(d)(2), will apply some portion of the judgment, not to exceed 25%, to satisfy the fee award and limit the total award to 150% of the judgment. *See* 42 U.S.C. § 1997e(d)(2); *Clark*, 965 F.Supp. at 334 & nn. 2 & 4.

### 1. Lodestar Methodology

■ Pursuant to § 1997e(d), the Court must limit an award to fees "directly and reasonably incurred in proving an actual violation of the plaintiff's rights...." 42 U.S.C. § 1997e(d)(1)(A). Courts customarily calculate the fee award by multiplying a reasonable hourly rate by the hours reasonably expended on the case. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir.1997) (describing the lodestar technique). "The fee applicant bears the burden of supporting both the hours worked and the reasonableness of the rates re-

quested." *Clark*, 965 F.Supp. at 335 (citing *Cruz v. Local Union No.3 of Int'l Bhd.*, 34 F.3d 1148, 1160 (2d Cir.1994)). District courts have the discretion to examine fee requests, but should "not 'become enmeshed in a meticulous analysis of every detailed facet of the professional representation.'" *Id.* at 335 (quoting *Seigal v. Merrick*, 619 F.2d 160, 164 n. 8 (2d Cir. 1980)). Such discretion is particularly justified where the district court is "familiar with the case and has had the opportunity to observe firsthand the majority of the work performed by [the] plaintiff's attorney." *Clark*, 965 F.Supp. at 335 (citations omitted).

### a. Reasonable Hourly Rate

Plaintiff requests an hourly rate of $250 for Mr. Gerhardstein and $180 for Ms. Branch. Under § 1988, the requested rates would most likely be deemed reasonable, especially given the experience and qualification of Plaintiff's counsel, the prevailing market rate, and past fees awarded to counsel. The next question is to determine whether this rate is acceptable under the PLRA. The PLRA standardizes the proper hourly rate awarded in prisoner civil rights cases. Specifically, § 1997e(d)(3) provides that the hourly rate cannot be greater than 150% of the hourly rate established for court-appointed counsel under 18 U.S.C. § 3006A. *See* 42 U.S.C. § 1997e(d)(3).[13]

Section 1997e(d)(3) provides:

No award of attorney's fees ... shall be based on an hourly rate greater than 150% of the hourly rate established under section 3006A of title 18, United

---

**13.** Defendants submit that Plaintiff's motion is limited by § 1997e(d)(3), making the maximum possible award $40,432.80. Defendants also argue that § 1997e(d)(1)(B)(i) requires the maximum figure to be further reduced as the Plaintiff only recovered against two of the three defendants. The Defendant contends that the figure must be reduced by a third. Defendants argue that the Sixth Circuit and the Southern District of Ohio once favored

proportional liability. *See, e.g., Marr v. Rife*, 503 F.2d 735, 744 (6th Cir.1974) (discussing proportional limitations on attorney fees awards); *Walker v. Fox*, 395 F.Supp. 1303, 1307 (S.D.Ohio 1975) (limiting attorney fees in proportion to the plaintiff's success). Defendants recognize that subsequent legal trends have rejected proportional limitations on fee awards but argue that the PLRA has reversed that trend in the law.

States Code, for payment of court-appointed counsel.

Pursuant to 18 U.S.C. § 3006A, the hourly rate for court-appointed counsel is not to exceed $40 per hour for out-of-court time and $60 for in-court time unless the Judicial Conference of the United States determines that a higher rate, not to exceed $75 per hour is justified in a circuit or a particular district. *See* 18 U.S.C. § 3006A(d)(1). In the Southern District of Ohio, the applicable rates are $70 for in-court time and $50 for out-of-court time. Thus, the maximum hourly rate under the PLRA for this district is $75 for each out-of-court hour and $105 for each in-court hour spent. *See* 42 U.S.C. § 1997e(d)(3).

As the rates claimed by Plaintiff's counsel exceed the maximum permitted pursuant to 42 U.S.C. § 1997e(d)(3), the Plaintiff's rate must be reduced to the maximum rate permitted by § 1997e(d)(3).

### b. Reasonable Hours Expended

Plaintiff seeks compensation for a total of 688.83 hours.[14] In support of Plaintiff's fee request, he submits the declaration of Mr. Gerhardstein as well as his billing records. This Court must limit the hours sought by Plaintiff to only those hours which were "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." *See* 42 U.S.C. § 1997e(d)(1)(A). The time records and specifically documented entries are sufficiently detailed and reasonable in the instant case. By the Court's records, the total in-court trial time was 35.5 hours for each attorney for a total of 71 hours. Subtracting 71 hours from 688.83 hours, the total out-of-court time spent by Plaintiff's attorneys was 617.83 hours. At the maximum hourly rate permitted under § 1997e(d), the fee award can be no larger than $53,792.25.

Beyond this base figure of $53,792.25, § 1997e(d) further limits the award in three significant ways. First, the amount of the fees must be "proportionately relat-

ed to the court ordered relief" or the fee must be "directly and reasonably incurred in enforcing the relief ordered for the violation." 42 U.S.C. § 1997e(d)(1)(B). Second, some portion of the judgment, not to exceed 25%, shall be granted to satisfy the fee award; and, third, the total award is restricted to 150% of the judgment. *See* 42 U.S.C. § 1997e(d)(2)-(3).

### 2. The Amount of the Fee Must Be Proportionately Related to the Court Ordered Relief

Section 1997e(d)(1)(B) requires that the amount of the fee be "proportionately related to the court ordered relief for the violation" or that "the fee was directly and reasonably incurred in enforcing the relief ordered for the violation." 42 U.S.C. § 1997e(d)(1)(B)(i)-(ii). The case law construing this provision is sparse. One court held that the "proportionality" requirement merely codifies pre-existing law regarding attorney fees under 42 U.S.C. § 1988. *See Boivin v. Merrill,* 66 F.Supp.2d 50, 52 (D.Me.1999). In *Boivin,* the court found that a fee award of $3,892.50 was reasonable and appropriate even though nominal damages of only $1.00 were awarded. The court, relying on the rationale set forth by the First Circuit Court of Appeals in *O'Connor v. Huard,* 117 F.3d 12, 18 (1st Cir.1997), and by the Supreme Court in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), found the fees to be "eminently reasonable" in view of "the deterrent impact of the litigation on those who would otherwise violate a prisoner's constitutional rights and the need to provide attorneys with an incentive to represent litigants seeking to vindicate such rights." *Boivin,* 66 F.Supp.2d at 52. In this case, the Plaintiff vindicated significant constitutional rights, received $15,000 in damages, and obtained a judgment in his favor that arguably has a deterrent impact on those who would "otherwise violate a prisoner's constitutional rights." This Court finds that a fee award of $53,792.25 is not inherently disproportionate.

---

**14.** This figure assumes that the 5.45 hours for Mr. Gerhardstein's law clerk is allowable.

3. **A Portion of the Monetary Judgment to Satisfy the Amount of Attorney Fees Awarded Against Defendant**

 The reverse fee-shifting portion of § 1997e(d)(2) provides that, "[w]henever a monetary judgment is awarded" to a party covered by § 1997e(d)(1), "a portion of the judgment (not to exceed 25%) shall be applied to satisfy the amount of attorney's fees awarded against the defendant." 42 U.S.C. § 1997e(d)(2).[15] In all cases, regardless of the proportionality or reasonableness standard set forth in § 1997e(d)(1)(B), this Court must consider the extent to which fees should be assessed against a portion of the judgment, up to 25%, and then determine the excess to be paid by the defendant.

Plaintiff argues that the fee-shifting provision should be limited to a nominal sum, such as $1. If fees were shifted back to the Plaintiff in this case, then the punitive effect of the damages award would be mitigated. Plaintiff also contends that this provision directly undercuts the purposes of § 1988. Thus, Defendants should be responsible for the entire damage award less one dollar.

Citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), Defendants argue that attorney fees are only available by virtue of Congressionally enacted statutes which Congress can alter. Defendants urge the Court not to ignore the reverse fee shifting that Congress intended in § 1997e(d)(2). Moreover, Defendants contend that the specific purpose of the reverse fee-shifting measure is to cause prisoners to engage in the same economic analysis as most potential tort claimants must: whether the costs of the litigation are worth the risk that a portion of any award will be consumed by the costs of obtaining it. Thus, Defendants claim that the Court, by setting the precedent of assessing $1 against the judgment, would frustrate Congress's intention of deterring potentially frivolous lawsuits, as well as the recognized rehabilitative effect of forcing prisoner's to take financial responsibility for their actions.

A plain reading of § 1997e(d)(2) indicates that the Court must deduct from the Plaintiff's judgment some portion of attorney fees awarded Plaintiff's counsel. Neither the plain language of the statute, nor the legislative history of the attorney fees provisions of the PLRA provide guidance in determining the appropriate percentage of the damage award to be used to offset an attorney fees award. This Court concludes, that ordering up to 25% of a successful plaintiff's judgment should not be a rote or mechanical exercise.

The present case involves a significant violation of the Plaintiff's rights. The Court interprets § 1997e(d)(2) to allow it to apply any portion of the judgment between 0 and 25% "to satisfy the amount of attorney's fees awarded against the defendant." 42 U.S.C. § 1997e(d)(2). In light of the facts of this case, the constitutional rights implicated, and the jury's clear signal that the Defendants should be punished, the Court finds that a $1 assessment against the judgment is within its discretion under § 1997e(d)(2). Thus, the Court applies .0000666% of the judgment to satisfy the amount of attorney fees awarded against the Defendants.[16]

**D. Liability of Defendant for Fees that Exceed 150 % of Plaintiff's Judgment**

 Plaintiff asserts that § 1997e(d)(2) does not govern the allowance of or liability for attorney fees awards in excess of

---

**15.** Section 1997e(d)(2) in its entirety provides:

Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25%) shall be applied to satisfy the amount of attorney's fees awarded against the defen-

dant. If the award of attorney's fees is not greater than 150% of the judgment, the excess shall be paid by the defendant.

**16.** This percentage equals approximately $1 ($15,000 × .0000666 = .999). The Court rounds the amount to $1.

150% of the judgment because the statute is silent on that point. Under Plaintiff's theory, because the PLRA is inapplicable in this situation, it should not act to limit fees that are in excess of 150% of the judgment.

Defendants counter that the construction of § 1997e(d)(2) urged by Plaintiff was rejected by Congress in drafting the language that finally appeared in the bill. Defendants maintain that Congress did not intend that a defendant would be liable for any amount other than that which was assessed against the judgment. Rather, Defendants argue that Congress intended to limit a defendant's fee liability to 150% of the judgment. Moreover, Defendants claim that Congress also intended to limit the incentive for prisoners's lawyers to believe that § 1983 litigation was a means of obtaining highly inflated fees and costs. Thus, Defendants contend § 1997e(d)(4) does contemplate fees that are more than 150% of the judgment, but clearly states that those fees are not the responsibility of the defendant.

Section 1997e(d)(2) provides: "[i]f the award of attorney's fees is not greater than 150% of the judgment, the excess shall be paid by the defendant." 42 U.S.C. § 1997e(d)(2). Plaintiff asserts, under traditional statutory interpretation, that the plain language of § 1997e(d)(2) addresses only the situation where the award of attorney fees is not greater than 150% of the judgment. Plaintiff concludes that § 1997e(d) does not govern fee awards that exceed 150% of the judgment, and that defendants may be held liable for reasonable attorney fees that exceed that amount. *See McLindon v. Russell,* No. C–1–95–676, slip op. (S.D.Ohio Dec. 13, 1999) (Sherman, Mag.).

The court in *Walker v. Bain,* 65 F.Supp.2d 591 (E.D.Mich.1999) (Komives, Mag.), determined that, under § 1997e(d)(2), a defendant's liability for attorney fees is limited to 150% of the judg-

ment. This Court believes that the statute is clear, that under § 1997e(d)(2), a defendant's liability for attorney fees is limited to 150% of the judgment. Nothing in the statute suggests otherwise. The *Walker* court reasoned that nothing in the statute would prevent a court from granting an award of fees that is 1000% of the judgment. The court concluded, "[h]owever, [that] there are only two sources from which such an award can be paid: the judgment and the defendants." *Id.* As the court found the amount that can be from the judgment and the Defendants is limited—from the Defendant, the former 25% and 150% of the judgment, a 1000% award would be "meaningless." *Id.* The Court finds this reasoning to be compelling and supported by § 1997e(d)(4).

Moreover, the PLRA permits fee for in excess of 150%, although such fees are not to be paid by the Defendant. Section 1997e(d)(4) states: "[n]othing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to section 1988 of this title." 42 U.S.C. § 1997e(d)(4). This Section establishes that Congress contemplated the very scenario on which Plaintiff claims it was silent, as it states that courts are free to award fees in excess of 150%, if the source of those funds is not the defendant, but is the plaintiff or individual. To hold that § 1997e(d) does not reach the dispensation of fee awards that exceed 150% would render § 1997e(d)(4) superfluous. The construction that Plaintiff urges is illogical and would render the PLRA meaningless—a result certainly not intended by Congress.

Under § 1997e(d) Defendant's liability for Plaintiff's fees must be limited to 150% of the judgment which would entitle Plaintiff to recover a maximum of $22,500 from the Defendant.[17] The Court applies

17. At least one court has departed from the standards set forth in § 1997e(d)(2), when there was arguably a monetary award. *See*

*Boivin v. Merrill,* 66 F.Supp.2d 50, 51 (1999). In *Boivin,* the court held that PLRA 150%

.0000666% of the judgment to satisfy Defendant's liability for the fee award. Thus, Defendant is liable for $22,499, in attorney fees which is 150% of the judgment, less $1.00 or .0000666% of the judgment.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Attorney Fees and Expenses in the amount of $22,499 to be paid by the Defendant.

**IT IS SO ORDERED.**

maximum does not include nominal damages. *Id.* If the court had held that nominal damages were a monetary judgment under § 1997e(d)(2), then the plaintiff's counsel would have been awarded $1.50 in attorney fees. *Id.* Finding this result to be " 'absurd,' " the court applied only the reasonableness and proportionality requirements of § 1997e. *Id.*

at 51–52 (quoting *Greenwood Trust Co. v. Commonwealth of Mass.*, 971 F.2d 818 (1st Cir.1992)).

This case is distinguishable on the ground that the Plaintiff received $15,000 in monetary damages. It is beyond reason to argue that the Plaintiff's award was not a "monetary judgment" as contemplated by § 1997e(d)(2).