# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2499

_____

| | | |
|---|---|---|
| Craig Boesing, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Julius K. Hunter; Vincent Bommarito; | * | |
| Joann Freeman Morrow; Chris | * | |
| Goodson; Francis G. Slay, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Lt. Joe Spiess, | * | |
| | * | |
| Defendant/Appellant | * | |
| | * | |
| John Doe, | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: March 14, 2008
Filed: August 29, 2008

_____

Before RILEY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Craig Boesing, a Missouri prisoner, brought this 42 U.S.C. § 1983 civil rights action against Lieutenant Joe Spiess and other St. Louis police officers for using excessive force during Boesing's arrest. At trial, a jury found Spiess liable for Boesing's injuries and awarded him $5,000 in compensatory damages and $20,000 in punitive damages. The district court[1] denied Spiess's motion for a new trial and awarded $37,500 in attorney's fees. The court also ordered that $250 of Boesing's judgment be applied to satisfy the attorney's fee award. Spiess brings this appeal. We affirm.

I.

Because the jury ruled in Boesing's favor on his claim against Spiess, "we provide the following recitation of facts in the light most favorable to the jury verdict and give all reasonable inferences to [Boesing], although we include certain facts urged by [Spiess] on appeal in order to elucidate the arguments [he] presents." Wilson v. City of Des Moines, 442 F.3d 637, 639 (8th Cir. 2006). St. Louis police officers arrested Boesing following a 45-minute foot chase on November 24, 2002. During the chase, Boesing climbed over a retaining wall and fell down a dirt embankment. When the chase ended, he immediately lay down on the ground. As he lay on his stomach, an unidentified officer kneeled on Boesing's back and handcuffed Boesing's hands behind his back. Spiess yelled and cursed at Boesing and ordered him to look up. When Boesing looked up, Spiess sprayed Boesing in the face with mace. When Boesing looked up again, he saw Spiess wielding a baton in his hand. Spiess then struck Boesing on his head and back with the baton. Boesing received 15 staples for a laceration on his head and sustained deep bruises on his back and side.

---

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

Spiess denied striking Boesing. Spiess and other officers testified that Boesing's injuries likely occurred when Boesing fell down the embankment. However, Boesing testified that he did not sustain any major injuries during the fall. Boesing also called an expert witness who testified that it was more likely that Boesing's injuries resulted from a blow with a blunt instrument rather than from falling down the embankment.

The district court submitted the case to the jury late in the afternoon on the second day of trial. Spiess asked that the following instruction be given to the jury: "The jury must consider that police officers are often forced to make judgments about the amount of force that is necessary in circumstances that are tense, uncertain and rapidly evolving." The district court rejected Spiess's proposed instruction. After deliberating for a short time, the jury was excused for the day. The jury returned the following morning. After a full day of deliberations, the jury sent a note to the trial judge stating that it had not reached a unanimous verdict. The district court gave the jury an <u>Allen</u>[2] charge, encouraging the jury to continue its deliberations. The jury returned the following day and reached a unanimous verdict after several hours of additional deliberation. On appeal, Spiess argues that the district court abused its discretion by denying his motion for a new trial, rejecting the proposed jury instruction, and applying only one percent of Boesing's judgment to satisfy the attorney's fee award.

## II.

Spiess contends that the district court abused its discretion by denying his motion for a new trial on two separate grounds. "The decision to grant a new trial is left to the sound discretion of the trial court and this court will not disturb the trial

---

[2]<u>Allen v. United States</u>, 164 U.S. 492, 501 (1896).

court's decision absent a clear showing of abuse of discretion." Pullman v. Land O'Lakes, Inc., 262 F.3d 759, 762 (8th Cir. 2001).

A.

Spiess argues that the district court abused its discretion in denying his motion for a new trial because the jury's verdict constituted an impermissible compromise verdict. If the district court finds that the jury reached a compromise verdict, the court should grant a new trial. See Haug v. Grimm, 251 F.2d 523, 527-28 (8th Cir. 1958). A compromise verdict results when the jury, unable to agree on the issue of liability, compromises that disagreement by awarding a party inadequate damages. E.g., Carter v. Chicago Police Officers, 165 F.3d 1071, 1082 (7th Cir. 1998); Shugart v. Cent. Rural Elec. Coop., 110 F.3d 1501, 1505 (10th Cir. 1997); Pagan v. Shoney's, Inc., 931 F.2d 334, 339 (5th Cir. 1991) (per curiam); Mekdeci v. Merrell Nat'l Labs., 711 F.2d 1510, 1513 (11th Cir. 1983). Spiess urges this court to consider several factors in reviewing the district court's decision, including the existence of a close question of liability, a grossly inadequate award of damages, and other circumstances such as the length of jury deliberations. While these factors may be useful, the overarching consideration must be whether the record, viewed in its entirety, clearly demonstrates the compromise nature of the verdict. E.g., Carter, 165 F.3d at 1083.

Viewing the record as a whole, we cannot conclude that the jury arrived at a compromise verdict in this case. Although some testimony supported both parties' versions of the facts and the jury deliberated for more than a day, there is absolutely no indication that the jury's damage award was inconsistent with its liability determination or otherwise grossly inadequate. Spiess claims that Boesing's $25,000 judgment "seems odd" because plaintiffs in other excessive force cases have recovered considerably more money. However, the damage award is consistent with the facts of this case. Boesing testified that he experienced pain and suffering during the two-week period it took his injuries to heal. The record contains no evidence that

he incurred any medical expenses or other out-of-pocket costs, or that he suffered any long-lasting, negative health effects as a result of his injuries. Boesing did not suggest an amount to the jury; he merely asked for "fair and reasonable" compensatory damages, as well as punitive damages. Under these circumstances, we cannot say that Boesing's damage award was so inadequate as to indicate that the jury reached an impermissible compromise verdict. Spiess's argument amounts to nothing more than an expression of his dissatisfaction with the jury's verdict, and the district court did not abuse its discretion by denying Spiess's motion for a new trial.

B.

Spiess also contends that the district court abused its discretion by denying his motion for a new trial because the jury's verdict was a miscarriage of justice. "A new trial is appropriate when the 'outcome is against the great weight of the evidence so as to constitute a miscarriage of justice.'" Christensen v. Titan Distrib., Inc., 481 F.3d 1085, 1098 (8th Cir. 2007) (quoting Chalfant v. Titan Distrib., Inc., 475 F.3d 982, 992 (8th Cir. 2007)). "When reviewing a jury verdict to decide whether it is against the weight of the evidence, the district court conducts its own review of the evidence to determine whether a miscarriage of justice has occurred." Peterson v. Gen. Motors Corp., 904 F.2d 436, 439 (8th Cir. 1990). However, the trial judge may not usurp the functions of the jury, which weighs the evidence and credibility of witnesses. White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992).

Spiess offers two arguments in support of his position that a miscarriage of justice occurred. First, Spiess asserts that Boesing's testimony was discredited on cross-examination because Boesing testified that he was maced first and then beaten, while his initial pro se complaint stated that he was beaten first and then maced. Second, Spiess contends that a baton could not have caused the marks on Boesing's side because his arms, which were handcuffed behind his back, would also have sustained injuries had he been struck by a baton. The resolution of these credibility

issues and factual conflicts is properly the role of the jury. See McBryde v. Carey Lumber Co., 819 F.2d 185, 189 (8th Cir. 1987). Boesing presented sufficient evidence at trial for the district court to conclude that the outcome was not against the great weight of the evidence so as to constitute a miscarriage of justice. Therefore, the district court did not abuse its discretion by denying Spiess's motion for a new trial.

III.

Spiess argues that the district court erred when it rejected one of his proposed jury instructions. We review the district court's jury instructions for abuse of discretion. In re Prempro Prods. Liab. Litig., 514 F.3d 825, 829 (8th Cir. 2008). "[A] party is entitled to an instruction on its theory of the case so long as it is legally correct and there is factual evidence to support it." Thornton v. First State Bank of Joplin, 4 F.3d 650, 652 (8th Cir. 1993). However, "'[w]e afford the district court broad discretion in choosing the form and language of the instructions' and 'will reverse a jury verdict only if the erroneous instruction affected a party's substantial rights.'" In re Prempro Prods., 514 F.3d at 829 (quoting Slidell, Inc. v. Millennium Inorganic Chems., Inc., 460 F.3d 1047, 1054 (8th Cir. 2006)). "Our review is limited to [] whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues [in the case] to the jury." Id.; accord Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 711 (8th Cir. 2001).

Spiess's proposed instruction invited the jury to determine whether the *amount* of force used was reasonable under the circumstances.[3] However, this case is not about whether Spiess used a reasonable amount of force when he struck Boesing; this

[3]The proposed instruction, based on the Eighth Circuit model instructions, reads: "The jury must consider that police officers are often forced to make judgments about the *amount* of force that is necessary in circumstances that are tense, uncertain and rapidly evolving." See 8th Cir. Civil Jury Instr. 4.10 (emphasis added).

-6-

case is about whether Spiess struck Boesing at all. Boesing testified that Spiess hit him with a baton after he was arrested, but Spiess denied ever striking Boesing. Spiess and the other officers testified that Boesing tumbled down an embankment and that his injuries likely resulted from the fall. Indeed, Spiess did not offer any factual evidence to support a jury instruction concerning the reasonableness of the amount of force used; therefore, he was not entitled to such an instruction. See Thornton, 4 F.3d at 652. Because the amount of force Spiess used was not at issue, the district court's jury instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury. See In re Prempro Prods., 514 F.3d at 829. The district court did not abuse its discretion by rejecting Spiess's proposed jury instruction.

IV.

Spiess contends that the district court erred by applying only one percent of Boesing's $25,000 judgment to satisfy Boesing's attorney's fee award because, according to Spiess, the fee-shifting provision in the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(d)(2), requires the district court to apply 25 percent of the judgment to pay attorney's fees. Section 1997e(d)(2) reads in part: "Whenever a monetary judgment is awarded in an action [brought by a prisoner], a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant." This court has held that section 1997e(d)(2) "requires the district court to use a portion of the judgment, not to exceed twenty-five percent, to pay attorney's fees." Lawrence v. Bowersox, 297 F.3d 727, 735 (8th Cir. 2002) (remanding to the district court to recalculate fees). However, this court has not directly addressed whether the district court must automatically apply

the 25-percent maximum or whether the PLRA gives the district court discretion to apply a lower percentage.[4]

The majority of courts that have directly addressed this issue have held that the plain language of section 1997e(d)(2) does not require district courts to automatically apply 25 percent of the judgment to pay attorney's fees. See Siggers-El v. Barlow, 433 F. Supp. 2d 811, 822-23 (E.D. Mich. 2006) ("The statute does not provide courts with guidance for determining the percentage to be applied. . . . [R]equiring Plaintiff to pay $1 in attorney's fees out of the judgment is appropriate."); Farella v. Hockaday, 304 F. Supp. 2d 1076, 1081 (C.D. Ill. 2004) ("The section's plain language sets forth 25% as the maximum, not the mandatory amount."); Collins v. Algarin, No. Civ. A. 95-4220, 1998 WL 10234, at *10 (E.D. Pa. Jan. 9, 1998) (unpublished) ("The PLRA does not impose any minimum percentage that must be applied toward the fees."); see also Murphy v. Gilman, Nos. 03-145, 04-103, 2008 WL 2139611, at *1-3 (W.D. Mich. May 20, 2008) (applying $1 against the judgment); Lawrence v. Bowersox, No. 4:97-CV-1135 (E.D. Mo. Oct. 2, 2002) (unpublished) (applying one percent against the judgment); Sutton v. Smith, No. AW-98-2111, 2001 WL 743201, at *2 (D. Md. June 26, 2001) (unpublished) (applying $1 against the judgment); Johnson v. Daley, 117 F. Supp. 2d 889, 905 (W.D. Wis. 2000) (reversed on other grounds) (applying $200 against a $40,000 judgment); Morrison v. Davis, 88 F. Supp. 2d 799, 811 (S.D. Ohio 2000) (applying $1 against the judgment). A small minority of courts have held that district courts must automatically apply 25 percent of the plaintiff's monetary judgment to pay attorney's fees. See Jackson v. Austin, 267 F. Supp. 2d 1059, 1071-72 (D. Kan. 2003); Roberson v. Brassell, 29 F. Supp. 2d 346, 355 (S.D. Tex. 1998).[5]

---

[4]On remand, the district court in Lawrence v. Bowersox applied one percent of the plaintiff's judgment to pay attorney's fees; the order was not appealed to this court. See Lawrence v. Bowersox, No. 4:97-CV-1135 (E.D. Mo. Oct. 2, 2002) (unpublished).

[5]Spiess erroneously cites two additional cases as supporting the minority view: Spruytte v. Hoffner, 197 F. Supp. 2d 931 (W.D. Mich 2001), and Walker v. Bain, 257

We agree with the majority view. The PLRA states that the district court "shall" apply a portion of the judgment "not to exceed 25 percent." 42 U.S.C. § 1997e(d)(2). The term "shall" indicates that the district court must apply some percentage of the judgment to pay attorney's fees, see Bowersox, 297 F.3d at 735, and the phrase "not to exceed 25 percent" clearly imposes a maximum, not a mandatory, percentage. This statute is not ambiguous. We hold that the plain language of 42 U.S.C. § 1997e(d)(2) does not require the district court to automatically apply 25 percent of the judgment to pay attorney's fees. Instead, the PLRA gives the district court discretion to apply a lower percentage. In the present case, the district court did not abuse its discretion by applying one percent ($250) of the $25,000 judgment to satisfy Boesing's attorney's fee award.

V.

Accordingly, we affirm the judgment of the district court.

_____

F.3d 660 (6th Cir. 2001). In Spruytte, the district court applied 25 percent of the plaintiff's judgment to pay attorney's fees; however, the court did not hold that the PLRA prevented it from applying a lower percentage. See 197 F. Supp. 2d at 934. Spiess interprets Walker as holding that the PLRA sets forth 25 percent as a mandatory amount; however, the passage of the opinion Spiess relies on merely contains the court's recitation of Walker's arguments, not the court's analysis. See 257 F.3d at 669. And even if Spiess's interpretation were accurate, the relevant passage is, at best, dicta because it was not necessary to the court's holding and has not been followed (or even mentioned) by lower courts in subsequent cases. See Siggers-El, 433 F. Supp. 2d at 822-23 (applying $1 against the judgment).