**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 8 1997**

**PATRICK FISHER**
Clerk

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

DAVID SHUGART and KATHY
SHUGART, husband and wife,

    Plaintiffs-Third Party-
    Defendants-Appellants,

v.

    No. 95-6250

CENTRAL RURAL ELECTRIC
COOPERATIVE,

    Defendant-Third Party-
    Plaintiff-Appellee,

---

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-94-1641-M)

---

Submitted on the briefs:

Mark A. Cox, Oklahoma City, Oklahoma, for Plaintiffs-Third Party-Defendants-
Appellants.

Kevin E. Krahl, Hornbeek, Krahl & Vitali, Oklahoma City, Oklahoma, for
Defendant-Third Party-Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **ANDERSON** and **BRORBY**, Circuit Judges.

**SEYMOUR**, Chief Judge.

In this personal injury action, plaintiffs David and Kathy Shugart obtained a jury award in their favor of $40,000 in actual and $10,000 in punitive damages. They appeal, challenging several rulings by the trial court. We affirm the jury award, but reverse the district court's reduction in actual damages by the proportion of David Shugart's contributory negligence. [1]

I.

Mr. and Mrs. Shugart, Texas residents, brought this diversity action against defendant Central Rural Electric Cooperative (CREC), an Oklahoma corporation. They sought damages for injuries suffered by Mr. Shugart when he touched an energized transformer operated by CREC in Logan County, Oklahoma, which had fallen to the ground after its support pole footing was eroded by flood waters. The accident occurred on July 16, 1993, while Mr. Shugart, an oil field worker, was waiting for a backhoe to extract his service truck from deep sand. Mr. Shugart testified that, while waiting, he and another worker played a game of catch; during that game Mr. Shugart fell onto the transformer. Mr. Shugart

---

[1] Pursuant to Rule 34(f) of the Rules of Appellate Procedure, the parties to this action waived oral argument. FED. R. APP. P. 34(f). After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See FED. R. APP. P. 34(a), 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

admitted that he saw the transformer on the ground before his fall and that he should have been more cautious of his movements in its vicinity. He had, however, assumed the transformer was de-energized.

Although it was suggested at trial that Mr. Shugart might actually have been tampering with the transformer when he was injured, it was undisputed that the transformer was energized for several months after it fell to the ground. It was also undisputed that CREC had notice the transformer was down before Mr. Shugart's injury, but failed to follow its own procedures which would have alerted it to the transformer's energized state and permitted it to repair its pole before Mr. Shugart's injury. Mr. Shugart suffered burns on his hands, where the electric current entered his body, and on his feet and chest, where the current exited his body. He was hospitalized for over a month and required several debridement and skin graft operations.

Mr. Shugart sought actual damages for past medical expenses, possible future medical expenses, pain and suffering, and diminished earning capacity. He also sought punitive damages. Mrs. Shugart sought damages for past and future loss of consortium resulting from Mr. Shugart's injury. The trial was bifurcated on the issue of damages. In phase one, the jury found Mr. Shugart fifty percent contributorily negligent and awarded the Shugarts $40,000 in actual damages. In phase two, the jury awarded the Shugarts $10,000 in punitive damages. The

district court then applied the jury's finding of comparative negligence to reduce the actual damage award to $20,000. The Shugarts now seek review of a variety of specific issues and of the district court's denial of their motion for a new trial.

II.

## A. Application of Contributory Negligence to Actual Damages

At trial, the Shugarts objected to the district court's bifurcation of actual and punitive damages, and to the jury instructions and verdict form used for contributory negligence. They claimed that Oklahoma law, as enunciated in Graham v. Keuchel, 847 P.2d 342 (Okla. 1993), requires an unbifurcated trial and different damage instructions. After the jury rendered its verdict, the Shugarts made a motion to enter judgment in the amount of $40,000 without reduction for Mr. Shugart's contributory negligence, which the district court denied.

"[A]s a federal court sitting in diversity, our role is to ascertain and apply [state] law" to reach the result the Oklahoma Supreme Court would reach if faced with the same question. Leadville Corp. v. United States Fidelity & Guaranty Co., 55 F.3d 537, 539 (10th Cir. 1995) (internal quotation omitted). We "review de novo a district court's determination of state law." Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

There was no error in bifurcating the trial. "[B]ifurcation of trials is permissible in federal court even when such procedure is contrary to state law." Ouids v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1435 (10th Cir. 1993). There is no indication the district court abused its discretion in bifurcating the trial here. Neither were the jury instructions on comparative negligence erroneous, since they comported with Oklahoma's Uniform Jury Instructions. Compare Instruction No. 29, Aplt.'s App. at 137, and Verdict Form # 3, id. at 143, with OKLAHOMA UNIFORM JURY INSTRUCTIONS CIVIL (OUJI) 118, 131 (2d ed. 1996). But we agree with the Shugarts that Graham prohibited the district court from applying Mr. Shugart's contributory negligence to reduce the actual damages award after the jury had found that CREC's conduct warranted an award of punitive damages.

In Graham, the plaintiffs appealed a jury verdict in a medical malpractice claim for the wrongful death of a child and bodily injury to the child's mother. Graham, 847 P.2d at 345. The case was remanded with instructions to bifurcate the wrongful death claim from the bodily injury claim so that the jury did not impute the mother's ordinary negligence to the child, id. at 357, to instruct on punitive damages, id. at 363-64, and to instruct on comparative fault with respect to the mother's bodily injury claim, id. at 367. On this last issue, the Oklahoma Supreme Court stated that a comparison between a plaintiff's ordinary negligence and a defendant's conduct cannot be made after "a defendant's behavior has been

-6-

established as willful and wanton." Id. at 362 (emphasis omitted). Although apportionment of damages is required when the defendant's conduct is merely negligent, that "same apportionment of fault into percentage figures becomes impermissible once a defendant's behavior has been established as willful and wanton." Id. (emphasis omitted). This difference in treatment is mandated because "[w]hile 'ordinary' and 'gross' negligence differ in degree, 'negligence' and 'willful and wanton misconduct' differ in kind." Id. (emphasis omitted).

The court in Graham concluded that "[c]ontributory negligence may not be compared either to preclude or reduce a plaintiff's recovery where the defendant's conduct is willful or wanton." Id. (emphasis omitted). As support for its view, the court cited with approval a Wyoming case which elucidates the application of this rule to jury verdicts. Id. at 361 n.95 (citing Danculovich v. Brown, 593 P.2d 187 (Wyo. 1979)). After a defendant's willful and wanton conduct is found, a plaintiff should be "awarded (1) pecuniary damages without adjustment for comparable negligence, and (2) exemplary damages in an amount that is fair and just." Danculovich, 593 P.2d at 196. Oklahoma juries are now so instructed. Instruction No. 9.17A of the Oklahoma Uniform Jury Instructions thus states:

> You are instructed that negligence is not a defense to conduct that is either willful and wanton or intentional. Therefore, if you find that the conduct of [Defendant] was willful and wanton or intentional, then you shall use the Blue Verdict Form and not reduce the amount of [Plaintiff]'s damages on account of any negligence of [Plaintiff].

OUJI 108 (emphasis added) (citing Graham, 847 P.2d at 363).

Despite the foregoing, CREC argues that the district court was correct in reducing the Shugarts' award of actual damages. First, CREC suggests that the court's comments in Graham regarding comparison of ordinary negligence and willful and wanton conduct are mere dicta. We disagree. Although the court admits that the guidance it offers is not dispositive of the appeal, Graham, 847 P.2d at 345 n.3, its comments are not dicta. The court states it is making a statement of Oklahoma law "critical to a complete resolution of the issues now before us," which is meant to guide the trial court on remand. Id. at 361 & n.98 (emphasis omitted). As a court sitting in diversity, we are not free to disregard this guidance. Moreover, even if it were dicta, our role as a diversity court mandates us to determine and apply state law as we believe the Oklahoma Supreme Court would. See Leadville Corp., 55 F.2d at 539. Graham and the Oklahoma Uniform Jury Instructions, which are adopted by the Oklahoma Supreme Court, Okla. S. Ct. Admin. Doc. 93-3, give us clear guideposts on this issue.

Alternatively, CREC argues that Graham should be restricted to a "fact situation involving . . . parental negligence in a medical malpractice case which had not been bifurcated." Aplee.'s Br. at 10. We disagree. Although there are aspects of Graham which are unique to cases of parental negligence in a child's

-8-

wrongful death claim, the discussion of the distinction between willful and wanton conduct and mere negligence is universal in application. When the court addressed the possible comparison of the mother's ordinary negligence with defendant's willful and wanton conduct, the court was concerned with the mother's individual claim for bodily injury. That claim was neither dependent on the mother's status as parent nor affected by the bifurcation of the child's wrongful death claim. The court considered whether, in the face of willful and wanton conduct, it would be appropriate to reduce the mother's actual damages by the proportion of her contributory negligence. The court stated that it would not. To ensure that such a comparison would not be made, the court ordered the jury on remand to be instructed "that while ordinary negligence of the plaintiff may be used as a defense against gross negligence, it may not be considered as a defense against any form of conduct found to be willful and wanton or intentional." Graham, 847 P.2d at 367 (emphasis omitted).

In this bifurcated trial, the jury was not instructed at the actual damages phase that willful and wanton conduct would bar the application of Mr. Shugart's proportionate negligence to reduce the actual damages award. [2] There was no reversible error in that omission, however, because at the time the jury made its

---

[2]In fact, the jury was instructed that if it found the plaintiff contributorily negligent, the court would thereafter reduce the damages. Aplt.'s App. at 143.

determination of actual damages, it had not yet made a finding of willful and wanton conduct. [3] The error arose only after the jury found that CREC's conduct warranted an award of punitive damages. [4] Once that determination was made, Oklahoma law prohibited the district court from applying Mr. Shugart's proportional negligence to reduce the actual damages award. We therefore hold that the district court erred when it reduced the Shugarts' award of actual damages by Mr. Shugart's proportionate negligence.

**B. Compromise Verdict**

The Shugarts next contend the district court erred when it overruled their motion for a new trial based on an alleged compromise verdict. A compromise verdict is one in which "the jury, unable to agree on liability, compromises that disagreement and enters a low award of damages." National R.R. Passenger Corp. v. Koch Indus., Inc., 701 F.2d 108, 110 (10th Cir. 1983). "To determine whether a verdict is a compromise . . ., a court looks for a close question of liability, a damages award that is grossly inadequate, and other circumstances such as length of jury deliberation." Id. The Shugarts argue that the verdict is

---

[3]Presumably in future trials involving comparative negligence, district courts will instruct with Instruction No. 9.17A of the Oklahoma Uniform Jury Instructions in mind. See supra at 7-8.

[4]The parties do not dispute that an award of punitive damages indicates the jury necessarily determined CREC's conduct to be willful and wanton.

-10-

grossly inadequate and must represent an impermissible compromise because the jury chose to award less than the Shugarts' claimed expenses, arguably without any award for pain and suffering, lost wages, diminished working capacity, or loss of consortium. While the closely contested liability in this case might suggest jury compromise, none of the other requisite indicia of compromise are present.

Damages are not grossly inadequate merely because a jury awards less than the plaintiff has requested. "The jury is entitled to disregard the damages asked for if they do not agree with the computations or if other evidence is introduced from which jurors could draw their own conclusions." Luria Bros. & Co. v. Pielet Bros. Scrap Iron & Metal, Inc., 600 F.2d 103, 115 (7th Cir. 1979). Several of the Shugarts' damages claims were contested. There was evidence to suggest that Mr. Shugart's decline in annual income [5] resulted not just from his injury but also from his employer's voluntary termination of a lucrative business contract, Aplee.'s Br., Add. Tr. vol. II at 105, his own attempt to start a hay-baling business, id. at 261, and his failure to begin work immediately after he was released to work, id. at 278. Mr. Shugart's claim that he experienced pain after his return to work was

_____

[5]In 1991, Mr. Shugart earned $20,273.06 from three well service business entities. Aplee.'s Br., Add. Tr. vol. II at 177. In 1992, Mr. Shugart earned $19,335.03. Id. at 178. In 1993, the year in which he was electrocuted, Mr. Shugart earned $11,765.64. Id. at 179. In 1994, Mr. Shugart earned $12,000. Id. at 181.

also controverted.  After the accident, Mr. Shugart neither sought medical assistance for his pain, Aplee.'s Br., Tr. vol. II at 278, nor performed prescribed physical therapy,  id. at 272-73.  While Mr. Shugart apparently had difficulty standing for long periods to perform his job, Aplt.'s App. at 229-30, he was nevertheless able to ride in rodeos and participate in cattle roping events, Aplee.'s Br., Add. Tr. vol. II at 264.

Nor is a compromise verdict suggested because Mrs. Shugart's loss of consortium claims [6] and Mr. Shugart's claim for out-of-pocket medical expenses were not contested by CREC.  Where the damages have not been stipulated, the jury is entitled to believe that a claim does not merit an award.        Mekdeci v. Merrell Nat'l Labs.  , 711 F.2d 1510, 1513 (11th Cir. 1983) (compromise verdict not necessarily indicated by insufficient damages);      Luria Bros.  , 600 F.2d at 115 (defendant not required to "produce any witnesses or other evidence to rebut" the proposed damages).  Moreover, in this case, any error on the award of medical damages was invited by the Shugarts' counsel.  Counsel submitted a list of exhibits to the jury on which the medical receipts were entitled "Medical bills (relevant) with reference to insurance redacted.     " Aplt.'s App. at 162 (emphasis

---

[6]Mrs. Shugart testified that she experienced a change in lifestyle after the accident.  She and Mr. Shugart went on fewer outings and picnics, and such events were less enjoyable because Mr. Shugart was unable to stand for long periods of time.  Aplt.'s App. at 257.

-12-

added). During their deliberations, the jury asked the court whether Mr. Shugart's out-of-pocket medical expenses had been paid by insurance. Id. at 182. Although it would have been error for the jury to consider insurance, that error if it occurred was invited by counsel's exhibit list. Brown v. Presbyterian Healthcare Servs. , 101 F.3d 1324, 1332 (10th Cir. 1996) ("an appellant may not generally complain on appeal of errors he has himself induced or invited").

"A motion for new trial is addressed to the sound discretion of the trial court and the granting or denial of such a motion will not be disturbed on appeal except for manifest abuse of discretion." Canady v. J.B. Hunt Transp., Inc. , 970 F.2d 710, 716 (10th Cir. 1992). Where there is evidence to support the jury's damage award, or the error in that award was invited, we are unwilling to conclude that the trial court abused its discretion by failing to grant a new trial based on an impermissible compromise verdict. [7]

---

[7]Determination of whether the district court abused its discretion by failing to recognize a compromise verdict requires review of the entire record. "The rule is . . . 'that the record itself viewed in its entirety must clearly demonstrate the compromise character of the verdict otherwise it is not error for the trial judge to refuse to set the verdict aside on this ground.'" Luria Bros. & Co. v. Pielet Bros. Scrap Iron & Metal, Inc., 600 F.2d 103, 115 (7th Cir. 1979) (quoting Maher v. Isthmian Steamship Co., 253 F.2d 414, 419 (2d Cir. 1958)). The Shugarts have failed to provide the entire trial transcript. Even if we were not already persuaded there was no error, we would not overrule the district court on an incomplete record.

## C. Loss of Consortium

The Shugarts contend the jury verdict form on loss of consortium was "erroneous on its face" and "explicitly contrary to the law." Aplt.'s Br. at 44. They assert that such error mandates a new trial. Id. Because the Shugarts did not object to this instruction at trial,[8] we can only consider it under the rubric of plain error. Cartier v. Jackson, 59 F.3d 1046, 1050 (10th Cir. 1995). "To constitute plain error, the district court's mistake must have been both obvious and substantial." Id. (quoting United States v. Meek, 998 F.2d 776, 779 (10th Cir. 1993)).

The jurors were offered three possible verdict forms. Verdict form one was to be used if Mr. Shugart was not contributorily negligent. Aplt.'s App. at 135 (Instruction No. 27). It specifically offered a place to allocate an award of damages for loss of consortium. Id. at 141. Verdict form two was to be used if the jury found in favor of CREC. Id. at 136 (Instruction No. 28). Verdict form

---

[8]The record on appeal does not demonstrate that the Shugarts specifically objected to the verdict forms on loss of consortium before the forms were submitted to the jury. See, e.g., Aplt.'s App. at 268-69 (plaintiff declining opportunity to object to jury instruction 20 on the definition of loss of consortium or instruction 24 on the measure of damages for loss of consortium). Generally, "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." FED. R. CIV. P. 51. The Shugarts did raise this issue, in passing, in their motion for a new trial. Aplt.'s App. at 163, n.2.

three was to be used if the jury found Mr. Shugart contributorily negligent.         Id. at

137-38 (Instruction No. 29).  While verdict form three did not offer a specific

place to allocate damages for loss of consortium, the instructions for the form did

make clear that the damages awarded on that form were for plaintiffs (plural).

The jury was given an instruction on loss of consortium, Aplt.'s App. at 132

(Instruction No. 24), which told the jury it could award loss of consortium

damages if it believed such damages were warranted.       [9]   The jury chose to use

verdict form three, found Mr. Shugart fifty percent contributorily negligent, and

_____

[9]The Shugarts proffered a proper jury instruction with regard to awarding
loss of consortium damages in the event of a finding of contributory negligence.
Aplt.'s App. at 32.  The proffered instruction referenced "the White Verdict
Form," the Oklahoma Uniform Jury Instruction form name for a contributory
negligence verdict form.  The district court used numbered verdict forms, and
erroneously substituted "verdict form one," the form to be used in finding for
plaintiff in the absence of contributory negligence, where the Shugarts had
requested "the White Verdict Form."  Thus, the instruction as given, read:

> If you decide for Kathy Shugart on the question of liability,
> you must then determine the amount of money which will reasonably
> and fairly compensate her for the value of the loss of consortium she
> has sustained, and for the value of the loss of consortium she is
> reasonably certain to sustain in the future.

> You are instructed that if you use Verdict Form No. 1, you
> should determine the full value of the loss of consortium.  Whatever
> dollar amount you determine will be reduced by the Court by that
> percentage of negligence which you have attached to David Shugart,
> if any.

Aplt.'s App. at 132 (emphasis added).  The Shugarts' counsel apparently failed to
notice this error because no objection was made.

awarded damages to the plaintiffs of $40,000.

The Shugarts now argue that the use of the verdict forms and the loss of consortium instruction, taken together, constitute reversible error because they required the jury to find Mr. Shugart zero percent contributorily negligent before permitting a loss of consortium damages award. We disagree. Nothing in Instruction No. 24 suggested that Mr. Shugart had to be zero percent liable before allowing an award of loss of consortium. The court merely stated that _if_ the jury used verdict form one, it would reduce the amount of Mrs. Shugart's damages by Mr. Shugart's comparative negligence. That statement was in error. If the jury had used verdict form one, the district court would not have reduced Mrs. Shugart's award by the percent of Mr. Shugart's negligence, because Mr. Shugart would have been determined to be non-negligent. Instruction No. 24 did not, however, suggest to the jury that it could only award Mrs. Shugart damages if Mr. Shugart was non-negligent. Although the district court did not direct the jury specifically to include loss of consortium on verdict form three, the jury was otherwise instructed that it could make such award if appropriate and the instructions to verdict form three referred to plaintiffs plural. Aplt.'s App. at 137. Moreover, the evidence on the nature of Mrs. Shugart's loss of consortium was sufficiently weak that the jury could have decided to make no award or a very small one. Under these circumstances, we conclude the error was not so obvious

and substantial as to rise to the level of plain error.

**D.  Evidentiary Errors**

The Shugarts contend the trial court abused its discretion when it failed to exclude evidence that Mr. Shugart might have been tampering with the transformer at the time of his electrocution.  We review a district court's exclusion of evidence for abuse of discretion.      Cartier , 59 P.2d at 1048.  "In doing so, we give deference to the district  court's evidentiary rulings."        Id.  There was credible evidence that the transformer had been tampered with prior to Mr. Shugart's injury.  Aplt.'s App. at 188; Aplt.'s Br., Add. Tr. at 123-24.  Moreover, Mr. Shugart's own attorney introduced the subject of stealing.  Aplee.'s Br., Add. Tr. vol. II at 174, 237.  The evidence regarding tampering and stealing was relevant to Mr. Shugart's contributory negligence and there was no abuse of discretion in its admission.

**E.  Other Jury Instruction Errors**

Finally, the Shugarts claim the trial court erred in overruling their objections to the jury instructions on impeachment, negligence per se, and duty to mitigate.  They also assert the district court erred in failing to give their requested instructions on spoliation of evidence.  "[A]n error in jury instructions requires

reversal 'only if the error is determined to have been prejudicial, based on a review of the record as a whole.'" <u>Wheeler v. John Deere Co.</u>, 862 F.2d 1404, 1411 (10th Cir. 1988) (quoting <u>Durflinger v. Artiles</u>, 727 F.2d 888, 895 (10th Cir. 1984)). We have reviewed these claims and find no error.

## III.

Based on all of the foregoing, we AFFIRM the district court's denial of a new trial to Mr. and Mrs. Shugart, but REVERSE the district court's reduction in the Shugarts' award of actual damages by Mr. Shugart's proportionate degree of negligence. We REMAND this case to the district court to enter judgment consistent with this opinion.