**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 17, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SELRAHC, a Limited Partnership,

        Plaintiff-Appellant,

  v.

TERRY BURRUSS,

        Defendant-Appellee,

  and

GERALD WAYNE BAILEY; EARP
ELECTRIC, INC.,

        Defendants-Third-Party-
        Plaintiffs-Appellees,

  v.

CHARLES ROYE, Individually,

        Third-Party-Defendant.

No. 04-7116
(D.C. No. 02-CV-221-W)
(E.D. Okla.)

---

SELRAHC, a Limited Partnership,

        Plaintiff-Appellee,

  v.

TERRY BURRUSS,

        Defendant,

No. 05-7116
(D.C. No. 02-CV-221-W)
(E.D. Okla.)

and

GERALD WAYNE BAILEY; EARP
ELECTRIC, INC.,

        Defendants-Third-Party-
        Plaintiffs-Appellants,

   v.

CHARLES ROYE, Individually,

        Third-Party-
        Defendant-Appellee.

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Judge, **O'BRIEN**, and **McCONNELL**, Circuit Judges.

---

These cases arise out of an oral contract for the construction of a motel in

Stigler, Oklahoma.  In March of 2001, Gerald Wayne Bailey agreed to construct

the motel for Selrahc, a limited partnership with Charles Roye as its managing

partner, at the cost of construction plus Mr. Bailey's ten percent fee.  Mr. Bailey

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

subcontracted with Terry Burruss to provide architectural services and with Earp Electric, Inc., to provide electrical services.

In August of 2001, the parties' relationship deteriorated after Mr. Roye refused to pay in full a bill presented by Mr. Bailey. Mr. Bailey eventually left the work site on the advice of his attorney and the motel was completed without the continued participation of Mr. Bailey, Mr. Burruss, and Earp Electric.

Selrahc sued Mr. Bailey, Mr. Burruss, and Earp Electric (the "defendants") in Oklahoma state court claiming negligence and breach of contract. After the case was removed to federal district court because of diversity of citizenship, Mr. Bailey and Earp Electric brought claims against Selrahc and Mr. Roye individually for breach of contract and open account. A jury found for the defendants on Selrahc's claims. The jury also found for Mr. Bailey and Earp Electric on their breach-of-contract claims and for Mr. Bailey on his open account claims.[1]

The district court denied Selrahc and Mr. Roye's motions for judgment as a matter of law and for a new trial with one exception: the court held that Mr. Bailey and Earp Electric had not proven a contractual relationship with Mr. Roye in his individual capacity and vacated the judgments against him. The

---

[1]    Earp Electric's open account claims were abandoned at trial and not submitted to the jury.

court awarded attorneys' fees to Mr. Bailey, Mr. Burruss, and Earp Electric, and also to Mr. Roye.

In appeal number 04-7116, Selrahc appeals from the district court's denial of its motions for judgment as a matter of law and for a new trial, and the district court's award of attorneys' fees to Mr. Bailey, Mr. Burruss, and Earp Electric. In appeal number 05-7116, Mr. Bailey and Earp Electric appeal from the award of attorneys' fees to Mr. Roye.

04-7116

Selrahc argues on appeal that (1) the district court erred in not granting it judgment as a matter of law as to all claims; (2) the district court committed numerous reversible errors during trial; (3) the verdicts were excessive and indicated "confusion" and "abuse of power" on the part of the jury, Aplt. Opening Br. at 22; and (4) the attorneys' fees granted to Mr. Bailey, Mr. Burruss, and Earp Electric were improper.

1. Denial of Judgment As A Matter of Law

Selrahc argues that because there was not a legally sufficient evidentiary basis for the jury verdicts on either its claims or the claims of Mr. Bailey and Earp Electric, the district court erred in not granting its motions for judgment as a matter of law and for a new trial.

> We review orders denying judgment as a matter of law de novo, applying the same standard as the district court and viewing all evidence in the light most favorable to the non-moving party.

-4-

> The standard for granting judgment as a matter of law is high: Unless the evidence so overwhelmingly favors the movant as to permit no other rational conclusion, judgment as a matter of law is improper.

*Kaiser v. Bowlen*, 455 F.3d 1197, 1206 (10th Cir. 2006) (citation and internal quotation marks omitted).  Similarly,

> We review the district court's denial of [a] motion for a new trial for abuse of discretion, viewing all the evidence in the light most favorable to the prevailing party.  A motion for a new trial on the grounds that the jury verdict is against the weight of the evidence normally involves a review of the facts presented at trial, and thus involves the discretion of the trial court.  Thus, even if we do not necessarily agree with the jury's verdict, it must be upheld unless it is clearly, decidedly or overwhelmingly against the weight of the evidence.

*Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1156-57 (10th Cir. 2006) (citations and internal quotation marks omitted).  Selrahc argues that the evidence supporting its claims was so overwhelming that the court erred in not granting its motions.

a.  Selrahc's Negligence and Breach-of-Contract Claims

"As a federal court sitting in diversity, our role is to ascertain and apply state law to reach the result the Oklahoma Supreme Court would reach if faced with the same question.  We review *de novo* a district court's determination of state law." *Shugart v. Cent. Rural Elec. Coop.*, 110 F.3d 1501, 1504 (10th Cir. 1997).  In Oklahoma, "[a] party seeking to establish negligence must prove by a preponderance of evidence the existence of a duty owed by the defendant to the plaintiff to use ordinary care, a breach of that duty, and an injury proximately

-5-

caused by the defendant's breach of duty." *Comer v. Preferred Risk Mut. Ins. Co.*, 991 P.2d 1006, 1010 (Okla. 1999). To prove breach, Selrahc had to prove that a contract existed between it and Mr. Bailey, Mr. Burruss, and Earp Electric, that the defendants breached the contract, and that Selrahc was damaged "as a direct result of [the] breach." *See Young v. Thomas*, 930 P.2d 836, 839 (Okla. Civ. App. 1996).

The parties do not dispute that the motel was to be built in compliance with the requirements of the Best Western hotel company and the applicable construction codes. Nor do the parties dispute that Mr. Burruss never submitted architectural plans that fully met Best Western's requirements, that certain wiring installed by Earp Electric violated the city code of Stigler, or that Mr. Roye eventually attempted to hire Mr. Bailey's subcontractors directly. The parties do dispute the reason behind Mr. Roye's refusal to pay an invoice submitted by Mr. Bailey in August of 2001. Selrahc argued at trial that Mr. Roye refused to pay the invoice until Earp Electric reinstalled the non-compliant wiring; that upon his refusal Mr. Bailey, Mr. Burruss, and Earp Electric abandoned the project; and that the only reason Mr. Roye contacted the subcontractors was because Mr. Bailey had abandoned the project and Mr. Roye was trying to finish it. Selrahc argues that it presented overwhelming evidence supporting these claims and that it was therefore entitled to judgment as a matter of law that defendants were negligent and breached the contract. We disagree.

The defendants presented evidence that Mr. Roye thought that Mr. Bailey was not doing enough work to justify his ten-percent fee and that he was concerned that Selrahc was being overcharged. They introduced evidence that Mr. Roye refused to pay all of the August 2001 invoice because he had decided that he was not going to pay for anything that had not been actually installed in the motel. Mr. Bailey testified that "when items are stored on the job site, they're either stored on the job site in a trailer or in a bonded warehouse for a commercial construction project." Aplt. App., Vol. II at 147.[2] He further testified that under standard industry practice a pay request is submitted once the subcontractor provides proof that the items are on the site or in the bonded warehouse. Mr. Bailey testified that he opposed Mr. Roye's decision to deviate from the standard practice because once the items were installed in the project they could not legally be removed if payment was not made and the only option remaining would be to lien the property. The defendants presented evidence that in his initial refusals to pay Mr. Roye made no mention of the faulty wiring and pointed to the fact that not only did Mr. Roye refuse to pay the portions of the invoice that were to go to Earp Electric and Mr. Bailey, he also refused to pay a portion that was to go to Steve Thomas Plumbing, a subcontractor not involved with the wiring. The defendants also presented evidence that when Mr. Bailey resisted the

_____

[2] Citations to briefs and appendices are to the briefs and appendices of the appeal that is being discussed.

change in payment practice, Mr. Roye contacted the subcontractors, told them that Mr. Bailey was no longer the contractor on the job, and tried to pressure the subcontractors into contracting directly with Selrahc.

Consequently, there was ample evidence presented from which the jury could have determined that Selrahc was the breaching party. It cannot therefore be said that the "evidence so overwhelmingly favor[ed] [Selrahc] as to permit no other rational conclusion" than that the jury verdicts were erroneous. *Kaiser*, 455 F.3d at 1206 (internal quotation marks omitted). The district court did not commit error by refusing to grant Selrahc's motions for judgment as a matter of law and for a new trial as to its negligence and breach-of-contract claims.

b. Mr. Bailey and Earp Electric's Claims

Selrahc also argues it was entitled to judgment as a matter of law on the claims brought against it. Its first argument is somewhat confusing because it claims that "CCB failed to establish that it had an agreement with Selrahc, a prerequisite to a claim for breach of contract." Aplt. Opening Br. at 12. While we infer that "CCB" refers to CCB, Construction, Inc., Mr. Bailey's construction company, *see* Supp. App. at 2, the claims in question were brought by Mr. Bailey in his individual capacity. Assuming that Selrahc intends to complain about the jury verdicts in favor of Mr. Bailey, we are at loss to understand how Selrahc can argue that there was no contractual relationship between itself and Mr. Bailey

when it brought its own breach-of-contract claim against Mr. Bailey.  This point is denied.

Selrahc next argues that "CCB presented no evidence supporting his [sic] claim for open account with Selrahc[;]" rather, "CCB's evidence went only to its claim for breach of contract."  Aplt. Opening Br. at 13.  Again assuming that Selrahc is referring to the open account verdict in favor of Mr. Bailey, we agree that there was not sufficient evidence to support the jury's verdict.  In Oklahoma, "three factors are required to establish an open account: (1) [a]n [a]ccount based upon running or concurrent dealings; (2) these dealings have not been closed, settled or stated; (3) some term of the contract remains to be settled between parties, or the agreement contemplates further transactions between the parties." *Office of Governor-Dep't of Indus. Dev. v. Dalton*, 560 P.2d 971, 972 (Okla. 1977).

The parties contracted for the construction of the motel for the cost of construction plus ten percent.  The factual situation here is therefore analogous to that found in *Whitson v. Wetherbee Electric Co.*, 416 P.2d 888 (Okla. 1966).  In *Whitson*, an electric company sued to collect on a contract that called (1) for it to provide the electrical materials and services necessary to "'hook[] up'" a "mechanical cutter, or shear," and (2) for it to be paid for the cost of the materials and services plus "a [certain] percentage of profit."  *Id*. at 889-90. One of the questions addressed by the Oklahoma Supreme Court was whether

such a suit was one on open account. The court quoted with approval various definitions of "open account," including:

> [A]n open account [is] an account "where the parties intend that the individual items of the account shall not be considered independently, but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits or credits are made thereto, until it shall suit the convenience of either party to settle and close the account . . . ."

*Id*. at 891 (quoting 1 Am. Jur. 2d *Accounts and Accounting* § 3). The court held that the suit on the amounts unpaid under the contract at issue was not a suit on open account.

The same reasoning applies here. While the parties to this cost-plus contract were unsure exactly how much finally would be spent, all of the terms were set because the contract would end when the building was completed. Consequently, the district court erred in not granting judgment as a matter of law on Mr. Bailey's open account claim, and we reverse the district court's judgment as to that claim.

Selrahc also argues that it was entitled to judgment as a matter of law on Earp Electric's claims for breach of contract and open account because Earp Electric offered no evidence to support these claims. Its point regarding Earp Electric's open account claim is denied because no such claim was presented to the jury. As to the breach-of-contract claim, Selrahc argues that the only evidence of breach of contract presented by Earp Electric was "Selrahc's refusal

to pay for electrical wiring not in conformance with local code." Aplt. Opening Br. at 11. This point is denied because, as discussed above, evidence was presented from which the jury could have found that Selrahc's refusal to pay was not based on the non-compliant wiring.

2. Alleged Reversible Errors During Trial

Selrahc claims that the district court erred in not granting its motion for new trial on the basis of substantial prejudicial error that occurred at trial. In particular, Selrahc claims the district court committed reversible error by (a) improperly admitting hearsay testimony regarding comments by the Stigler City Clerk, (b) improperly admitting discovery deposition testimony from Best Western employees, (c) improperly excluding evidence regarding Mr. Burruss's state disciplinary proceedings, (d) improperly allowing prejudicial attorney misconduct, (e) improperly commenting on the evidence in front of the jury, and (f) giving improper instructions and verdict forms to the jury. As noted previously, we review a district court's denial of a motion for new trial for abuse of discretion. *Escue*, 450 F.3d at 1156.

a. Hearsay Testimony Regarding Comments by the Stigler City Clerk

At trial, Mr. Bailey was questioned about a visit he and Mr. Earp of Earp Electric made to LeAnn Lassiter, the City Clerk for Stigler, Oklahoma. When Mr. Bailey initially began to testify about comments Ms. Lassiter made regarding the city's electrical code, Selrahc's attorney objected to the testimony as being

hearsay and the objection was sustained.  Mr. Bailey later was allowed to testify (over Selrahc's objection) that he was told that the city used the National Electric Code (NEC), which did *not* require the wiring at issue to be installed in conduit. Finally, Mr. Bailey testified again, this time under cross-examination by Selrahc's attorney, that the city told him that the NEC was the only applicable code.  At that point, counsel for Selrahc questioned Mr. Bailey extensively regarding who from the city had given him this information, when it was given, whether Ms. Lassiter was going to appear as a witness, and whether he had talked to Ms. Lassiter since she had given him that information or since the lawsuit began.

Selrahc argues on appeal that the district court improperly admitted hearsay, which "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Defendants argue that Ms. Lassiter's statements are admissible under the state of mind exception of the hearsay rule. *See* Fed. R. Evid. 803(3).

Selrahc's point is denied.  There is no need to consider any of the various hearsay exceptions because Ms. Lassiter's statement was not hearsay.  It was undisputed that the Stigler City Code required the wiring in question to be in conduit.  Therefore, Ms. Lassiter's statement was not offered as proof of the truth of what she said–i.e., that the city code simply incorporated the NEC (which does not require such wiring to be in conduit)–but instead solely as proof that she made

-12-

the incorrect statement, and that Mr. Bailey and Mr. Earp relied on that statement. *See* Fed. R. Evid. 801 advisory committee's note to subdivision (c) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.").

b. Deposition Testimony from Best Western Employees

At trial, transcripts of deposition testimony from Best Western employees Lori Gonzales and Mark Holst and reports attached to the transcripts were admitted into the record, the testimony was read to the jury and the exhibits displayed. The testimony concerned Ms. Gonzales's and Mr. Holst's actions regarding a visit Mr. Holst made to the motel. The exhibits were "reports" prepared by Ms. Gonzales and Mr. Holst regarding the situation with the motel. Prior to the testimony being read into the record, Selrahc's counsel stated his objections, which were directed to the content of Ms. Gonzales's and Mr. Holst's *reports*, specifically that (1) Ms. Gonzales's testimony barely referenced her report and emails contained in the report included hearsay statements from third parties, and (2) Mr. Holst's report and testimony also contained a substantial number of hearsay statements from third parties. Selrahc's counsel requested that the court redact all third-party hearsay statements from the reports.

On appeal, Selrahc complains that Ms. Gonzales's and Mr. Holst's deposition testimonies were irrelevant and were themselves hearsay statements

-13-

because "[n]either witness appeared at trial, nor was there any showing that these witnesses were unavailable." Aplt. Opening Br. at 15. This point is denied because neither of these objections were raised at trial. "If [a] complaining party fail[s] to make a contemporaneous objection at trial" as to evidence that it claims was improperly admitted "we review the ruling under a plain error standard." *Nat'l Envtl. Serv. Co. v. Ronan Eng'g Co.*, 256 F.3d 995, 1001 (10th Cir. 2001); *see* Fed. R. Evid. 103(a) and (d). On plain error review "we will only reverse in an exceptional circumstance–one where the error was patently plainly erroneous and prejudicial, and fundamental injustice would otherwise occur." *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1227 (10th Cir. 2001) (citations and internal quotation marks omitted). The admission of the deposition testimony does not meet this standard.

c. Evidence Regarding Mr. Burruss's State Disciplinary Proceedings

At trial, Selrahc's counsel sought to offer into evidence a finding of the Oklahoma architectural board that Mr. Burruss had violated Oklahoma law by practicing architecture in the state without an Oklahoma license. Out of hearing of the jury, Selrahc's counsel argued that the findings needed to be admitted to show a state law violation. Defendants' counsel reiterated an objection previously raised in a motion for limine, arguing that the finding from the disciplinary proceeding was overly prejudicial in light of the fact that Mr. Burruss admitted that he violated Oklahoma law. The court sustained the objection and

-14-

excluded the evidence but agreed that the document could be used if Mr. Burruss denied violating the law. Following the bench conference Mr. Burruss admitted that he had violated Oklahoma law by preparing and submitting architectural plans without a license.

On appeal, Selrahc argues that the evidence from the architecture board was "highly probative" and that Mr. Burruss's "testimony, that he was working on an application with the state architectural board, . . . coupled with the lack of evidence of state sanctions[,] allowed Bailey and Burrus[s] to trivialize the matter as if it were not a breach of the parties' contract and did not evidence negligence." Aplt. Reply Br. at 8.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. Here, Selrahc's argument was that the architectural board finding was probative because it showed a violation of state law. Actually, it was merely duplicative of Mr. Burruss's own testimony that he violated state law. Further, the probative value of the violation of state law was compromised by the undisputed fact that Selrahc was aware that Mr. Burruss was not licensed in Oklahoma at the time he started work. The district court committed no abuse of discretion and Selrahc's point is denied.

d.  Prejudicial Attorney Misconduct

At trial, Mr. Roye testified to additional funds expended by Selrahc on lighting for the motel following the departure of Earp Electric.  Counsel for defendants cross-examined Mr. Roye regarding a "disclaimer" from Cecil Don Robertson, the electrician who replaced Earp Electric, in which it was made clear that Mr. Robertson had installed only the upper portion of the parking lot lights. After Mr. Roye testified that he did not remember signing the disclaimer, defense counsel was allowed, over objection, to give the document to Mr. Roye to "refresh his memory."  Aplt. App., Vol. IV at 566.  After examining the document, Mr. Roye was asked a number of questions about Mr. Robertson and the disclaimer.  Mr. Roye testified that he did not recall ever seeing the disclaimer and that the signature on it was his wife's, not his.

Selrahc subsequently moved for a mistrial, arguing that the exchange had led the jury to believe that Roye's wife had signed the document in his name when she had actually signed her own name.  Defense counsel argued that he had in good faith thought that Mr. Roye had signed the document but that Mr. Roye had been clear that his wife had signed it and that she had signed her own name. The district court denied the motion for a mistrial but gave the jury a limiting instruction drafted by Selrahc's counsel instructing the jury that the disclaimer was not signed by Charles Roye.

On appeal, Selrahc alleges that a mistrial should have been granted because defense counsel "deliberately misrepresented, to the Court and the Jury, in repeated questioning, that Mr. Roye had signed a document he did not sign, for the purpose of making Mr. Roye appear as if he were lying." Aplt. Opening Br. at 18. "We review the district court's denial of a motion for mistrial for abuse of discretion. In deciding whether the court abused its discretion, we assume that the trial judge is in the best position to determine whether an incident was so serious as to warrant a mistrial." *Rios v. Bigler*, 67 F.3d 1543, 1550 (10th Cir. 1995) (citation and internal quotation marks omitted).

Mr. Roye was in no way prejudiced by this exchange. He clearly testified that the signature on the disclaimer was his wife's, no evidence was presented to contradict that testimony, and the jury was then instructed that Mr. Roye's testimony was correct. Selrahc's point is denied.

e. Improper District Court Comments on Evidence

Selrahc argues that the district court improperly commented on an attempt by Selrahc's counsel to impeach testimony of Terry Burruss. Selrahc forwarded the first set of architectural plans submitted by Mr. Burruss to Best Western. After Selrahc had received Mr. Burruss's second set of plans, it received a letter from Best Western (the "July 20th letter") detailing the deficiencies found in the first set. At trial, Selrahc's counsel asked Mr. Burruss if the second set of plans he had submitted had already addressed the deficiencies Best Western listed in the

-17-

July 20th letter. Mr. Burruss testified that the second set did correct those deficiencies and Selrahc's counsel introduced earlier deposition testimony in an effort to impeach his testimony. In that deposition testimony, *Selrahc's counsel* stated:

> Now, my understanding from what you've told me is that Exhibit Number 2 did not correct all the deficiencies identified by [Best Western], and this was a preliminary revised plan and that you did not intend that these ever–this particular document right here, just this document, that it be sent to Best Western.

Aplt. App., Vol. II at 220. Mr. Burruss then answered: "[A]t the time I had sent [the second set] up there, I was not aware of the July 20th letter. I was aware there had been a Best Western representative on the site that had relation to these that had comments about the rooms not being large enough." *Id.*, Vol. II at 220-21. After this deposition testimony was read by Selrahc's counsel, the judge stated that he was not sure that it actually impeached Mr. Burruss's trial testimony and sustained an objection to the use of the testimony.

There was no prejudice here. Following the reading of the deposition testimony, Mr. Burruss *admitted* that the second set of plans did not completely correct the deficiencies listed in the July 20th letter. So even though the judge sustained the objection to the deposition testimony Selrahc succeeded in impeaching Mr. Burruss's previous testimony. Selrahc's point of error is denied.

f. Improper Instructions

Selrahc claims the district court erred in instructing the jury on the theory of quantum meruit.

> In a diversity case, the substance of a jury instruction is a matter of state law, but the grant or denial of a tendered instruction is governed by federal law. We review de novo the ultimate question of whether the jury was properly instructed on the question of law. In so doing, we examine the instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence.

*Haberman v. Hartford Ins. Group*, 443 F.3d 1257, 1273 (10th Cir. 2006) (citations and internal quotation marks omitted). "We review the district court's decision to give a particular jury instruction for an abuse of discretion. The instructions are considered as a whole *de novo* to determine whether they accurately informed the jury of the governing law." *Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008, 1019 (10th Cir. 2006) (citation omitted). "Reversal is warranted when a deficient jury instruction is prejudicial. Thus, where a jury instruction is legally erroneous, we must reverse if the jury might have based its verdict on the erroneously given instruction." *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1202 (10th Cir. 1997) (citation and internal quotation marks omitted).

At trial, the district court instructed the jury on the theory of quantum meruit in regard to Earp Electric's claims. "[T]he common-law doctrine of quantum meruit . . . is founded on a Latin phrase meaning, 'as much as he deserves,' and in law has been defined as a legal action grounded on a promise

-19-

that the defendant would pay to the plaintiff for his services as much as he should deserve." *Martin v. Buckman*, 883 P.2d 185, 193-94 (Okla. Civ. App. 1994) (internal quotation marks omitted). Selrahc argues that Earp Electric could not recover under quantum meruit because of the existence of an express contract. *See Shumaker v. Hazen*, 372 P.2d 873, 875 (Okla. 1962) (agreeing with counsel's argument that, as a general proposition of law, "[t]here cannot be an express and an implied contract for the same thing existing at the same time") (internal quotation marks omitted). But as Earp Electric correctly points out, no express contract existed between it and Selrahc. And, even if an express contractual relationship was found to exist: "Where a petition declares upon an express contract but negatives full performance of it because of defendant's wrongful act, a recovery for debt may be had upon a quantum meruit." *Id*. (quotations omitted). The district court did not abuse its discretion in instructing the jury on quantum meruit.

Selrahc also argues that the district court committed reversible error by instructing the jury on substantial performance regarding Mr. Bailey's and Earp Electric's breach-of-contract claims. The jury was instructed that "[a] party who has substantially performed a contract is entitled to recover" and that defendants substantially performed if "Selrahc received substantially what the contract required; any omissions, deviations or defects can be corrected without difficulty; and Defendants acted in good faith in intending to perform their part of the

contract." Aplt. App., Vol. I at 136. Selrahc argues that the evidence was clear that neither Mr. Bailey nor Earp Electric had substantially performed their duties under the contract. *See Thompson v. United States*, 223 F.3d 1206, 1210 (10th Cir. 2000) ("Jury instructions should be given only if they are supported by competent evidence.") (internal quotation marks omitted).

Since the motel was not close to completion and the wiring in question did not comply with the Stigler code when Mr. Bailey and Earp Electric left the job site, we agree that there was not sufficient evidence to warrant the substantial performance jury instruction. However, the error could not have been prejudicial. Mr. Bailey and Earp Electric's argument to the jury was not that they had substantially performed but that Selrahc had driven them off the work site after trying to change how payments were made. Selrahc's argument was that the defendants abandoned the project after it refused to pay for faulty wiring. The jury was not only instructed on substantial performance but also that "[a] contract is breached or broken, even if the time for performance has not arrived, when one party notifies the other or acts in such a way that it is clear that he does not intend to do what was promised in the contract[,]" Aplt. App., Vol. I at 134; that "[a] party is relieved of the duty to perform a contract if the other party to the contract prevented him from performing," *id*., Vol. I at 135, and that "[e]ven though a contract may call for a condition to be satisfied before a party's performance is required, in some cases the condition may be excused so that the party's

-21-

performance is required even though the condition has not been satisfied," *id.*, Vol. I at 137. Since it is clear that the jury believed the defendants' version of events, there was no reason that it would have relied on the more difficult finding of substantial performance in reaching its verdict.[3] This point is denied.

3. <u>The Verdicts Reflected Inconsistencies On Their Face and Indicated Confusion and Abuse of Power</u>

The jury found for Mr. Bailey and against Selrahc on both his breach-of-contract claim and his open account claim, awarding $11,127.00 to Mr. Bailey on each claim. The jury also found for Earp Electric and against Selrahc on Earp Electric's breach-of-contract claim, awarding it $4,997.00. Selrahc argues that the district court erred in not granting its motion for a new trial because the verdicts were inconsistent. Selrahc did not object to the verdicts prior to the discharge of the jury.

> A failure to object to general jury verdicts on the ground of
> inconsistency before the jury is discharged constitutes waiver, unless
> the verdict is inconsistent on its face such that the entry of judgment
> upon the verdict is plain error. Plain error exists only when verdicts
> are inconsistent on their face.

---

[3] Selrahc also argues that the jury instruction "error was further compounded by the submission of a verdict form on an open account[] in favor of Earp Electric . . . after the judge's clerk advised that the verdict form would be deleted." Aplt. Opening Br. at 22. No such verdict form was presented to the jury.

*Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 911 (10th Cir. 2004) (citation, internal quotation marks, and footnote call number omitted). Selrahc argues that the verdicts were inconsistent on their face. We disagree.

Selrahc's argument is that the $11,127.00 verdict is identical to the amount that Mr. Bailey testified was the cost of certain items that were used on the project for which he was never paid, and that $4,997.00 is identical to the amount of usable material that the electrician who replaced Earp Electric found when he entered the job site. Selrahc argues that "[t]he jury is believed to have intended one judgment, in the amount of $11,127.00, in favor of [Mr.] Bailey, and one judgment, in the amount of $4,997.00, in favor of Earp Electric" and that the double award of $11,127.00 (to Mr. Bailey) "shows the jury was confused and the award is completely inconsistent with the evidence and instructions." Aplt. Opening Br. at 23.

This is not facial inconsistency requiring a grant of new trial despite the failure to object. The verdicts here were all against Selrahc. To the extent that Selrahc is arguing that the evidence did not support two verdicts of $11,127.00, that argument is moot in light of our previous determination overturning the open account award.[4] To the extent that Selrahc is attempting to argue that even the

---

[4] We note that the jury was instructed that even if it found in favor of Selrahc on both its breach-of-contract claim and its negligence claim only a single recovery of damages could be awarded. No similar instruction, however, was requested in regard to the breach-of-contract and open account claims brought by

(continued...)

verdicts that it believed the jury intended were excessive, or to reprise or raise further claims regarding the sufficiency of the evidence as to its liability on Mr. Bailey and Earp Electric's breach-of-contract claims or the amount of the verdicts on those claims, those arguments are not properly presented in this point and are waived. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (holding that "mere conclusory allegations with no citations to the record or any legal authority for support" constituted inadequate briefing such that the points of error were waived).

4. Improper Attorneys' Fees Granted to Mr. Bailey, Mr. Burruss, and Earp Electric

The district court awarded attorneys' fees against Selrahc and in favor of Mr. Burruss, Mr. Bailey, and Earp Electric in the total amount of $96,938.46. Selrahc argues that Mr. Bailey was the only party entitled to recover attorneys' fees and he was only entitled to recover fees earned in pursuing his open account claim.

In Oklahoma, a prevailing party cannot recover attorneys' fees "in the absence of a statute or an enforceable contract." *Sisney v. Smalley*, 690 P.2d 1048, 1049 (Okla. 1984). Here, the award to Mr. Burruss, Mr. Bailey, and Earp Electric was predicated on Okla. Stat. Ann. tit. 12, § 936. That statute reads:

---

[4](...continued)
Mr. Bailey.

> In any civil action to recover for labor or services rendered, or on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

The Oklahoma Supreme Court has held that "the mandatory provisions of § 936 that the prevailing party in an action to recover for labor and services shall be allowed a reasonable attorney fee are strictly applied." *Kay v. Venezuelan Sun Oil Co.*, 806 P.2d 648, 650 (Okla. 1991) (footnote call number omitted). Selrahc argues that while Mr. Bailey should have been allowed to recover attorneys' fees on its open account claim, "[t]he Oklahoma Supreme Court and the Court of Appeals have made it clear that [§ 936] does not cover damages for breach of contract." Aplt. Opening Br. at 25. Selrahc misapprehends the law. The Oklahoma Supreme Court has held:

> It is the underlying nature of the suit itself which determines the applicability of the labor and services provisions of section 936. If the action is brought for labor and services rendered, the provisions of section 936 apply. If the nature of the suit is for damages arising from the breach of an agreement relating to labor and services the provisions of this section do not necessarily apply. The question is whether the damages arose directly from the rendition of labor or services, such as a failure to pay for those services, or from an aspect collaterally relating to labor and services, such as loss of profits on a contract involving the rendition of labor and services.

*Burrows Constr. Co. v. Indep. Sch. Dist. No. 2*, 704 P.2d 1136, 1138 (Okla. 1985) (footnote call numbers omitted). The district court held that Selrahc's claims

against Mr. Burruss "clearly related to damages arising from architectural services rendered." Aplt. App., Vol. I at 104. It further held that Mr. Bailey was entitled to recover on his open account claim, as conceded by Selrahc, and that Selrahc's claims against Earp Electric and Earp Electric's breach-of-contract counter-claim against Selrahc, "all relate to the rendition of labor or services." *Id.*, Vol. I at 105.

We disagree that Selrahc's action was one "to recover for labor or services rendered" under § 936. Under *Burrows Construction Co.* "[t]he question is whether the damages arose directly from the rendition of labor or services, such as a failure to pay for those services." 704 P.2d at 1138. Here Selrahc did not render any labor or services under the contract. In *Russell v. Flanagan*, 544 P.2d 510 (Okla. 1975), the Oklahoma Supreme Court examined and partially overturned *Walls v. Russell*, 519 P.2d 936 (Okla. Civ. App. 1974). In *Walls*, a plumber sued a landowner for money due on a plumbing contract and to foreclose on a mechanics lien. The landowner then sued the plumber for breach of contract. Both parties successfully defended and sought attorneys' fees under § 936 but the trial court awarded attorneys' fees only to the landowner for her defense of the plumber's action. The court of appeals reversed the trial court's denial of fees to the plumber. The Oklahoma Supreme Court then overturned the court of appeals, holding that the landowner's suit was not an action for labor or services. *Russell v. Flanagan*, 544 P.2d at 512; *see also Indep. Sch. Dist. No. 4 v. Energy*

*Conservation Eng'g, Inc.*, 727 P.2d 599, 600-01 (Okla. Civ. App. 1986) (holding that a school district's suit against an engineering firm for breach of a contract to improve its school's heating systems was a suit to recover an increase in the costs of construction and therefore did not directly relate to the rendition of labor or services).

Consequently, the award of attorneys' fees to Mr. Burruss must be reversed. We affirm the award of attorneys' fees in regard to Mr. Bailey and Earp Electric's claims for breach of contract and quantum meruit. Mr. Bailey and Earp Electric claimed that they provided services for Selrahc and that Selrahc ran them off the job and did not pay for their contracted services. Nevertheless, because the order awarding attorneys' fees did not specify what portion of the $96,938.46 attorneys' fee award was due to each of the three parties, we must remand to the district court for further findings.

## 05-7116

In their cross appeal, Mr. Bailey and Earp Electric complain that the district court erred in awarding $56,254.53 in attorneys' fees to Mr. Roye individually. As noted above, Mr. Bailey and Earp Electric brought claims against both Selrahc and Mr. Roye. The district court granted judgment as a matter of law to Mr. Roye as to all of the claims asserted against him and subsequently awarded him attorneys' fees.

Mr. Bailey and Earp Electric do not appeal the district court's grant of judgment as a matter of law to Mr. Roye, nor do they dispute that he was entitled to some attorneys' fees for prevailing on the claims against him. But they argue that the amount of attorney fees awarded to Charles Roye improperly included practically all of the attorney fees incurred by Selrahc. We agree.

Mr. Bailey and Earp Electric argued to the district court that almost all of the attorneys' fees claimed by Mr. Roye were also incurred by Selrahc. They then argued that Mr. Roye should only be allowed to recover attorneys' fees incurred solely in his defense of Mr. Bailey and Earp Electric's claims against him because the other fees would have been incurred even if Mr. Roye had not been a party. The district court then held that

> no authority has been presented by Bailey and Earp to support their contention that a prevailing party cannot recover its attorney's fees and costs because the same attorney represented a non-prevailing party. The fact the two parties represented by Mr. Hayes in this case had parallel interests does not logically preclude recovery.

Aplt. App. at 153.

On appeal, Mr. Bailey and Earp Electric reiterate their district court claims, citing to Oklahoma case law regarding apportionment of attorneys' fee awards in arguing that the district court should have apportioned the attorneys' fees between Mr. Roye and Selrahc. Mr. Roye counters that Mr. Bailey and Earp Electric's claims were against both him and Selrahc and that

-28-

[i]t was [Mr. Bailey and Earp Electric's] decision to frame their case on the theory that Charles Roye and SELRAHC were identical. This unavoidably resulted in attorney time being expended in the defense of both Charles Roye and SELRAHC, and the lower court did not award any attorney fees for work performed exclusively for SELRAHC.

Aplee. Br. at 3.

There is no need to resort to discussion of Oklahoma case law regarding apportionment of attorneys' fees among various legal claims to resolve this point. A review of the billing records submitted in support of Mr. Roye's motion for fees shows that many of the listed charges applied to both Mr. Roye and Selrahc. The most obvious example is the billing for the four-day trial and the preparation for that trial. The fee affidavit from Mr. Roye's lead attorney shows that his hourly billing rate was $150. The affidavit shows twelve hours charged at that rate for "Trial at McAlester" on September 8, 2003; nine hours charged for the trial on September 9, 2003; thirteen hours charged for the trial and "work on invoices" on September 10, 2003; and nine hours charged for the trial on September 12, 2003. Aplt. App. at 113. These are full days of legal work that could not have been legally charged to both Mr. Roye and Selrahc.

In this case there were two clients to whom these legal fees were to be charged. When an attorney has done legal work that benefits two clients, it is not proper for that attorney to aver after the fact that all of the legal work was solely for the benefit of the client who has been awarded attorney's fees. The burden of

-29-

proof is on the party claiming attorneys' fees to prove entitlement and to "document[] the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The district court abused its discretion in awarding attorney's fees pursuant to an affidavit that was improper on its face. Reversal and remand is therefore required so that the district court may determine the amount of attorneys' fees applicable to Mr. Roye individually.[5]

## CONCLUSION

The judgment of the district court in favor of Mr. Bailey on his claim for open account against Selrahc is REVERSED. The district court's order awarding attorneys' fees to Mr. Burruss is REVERSED. The district court's order awarding attorneys' fees to Mr. Bailey and Earp Electric is VACATED and remanded to the district court for determination of the proper amount to be awarded to Mr. Bailey and Earp Electric in accordance with this Order and Judgment. The district court's order awarding $56,254.53 in attorneys' fees to Mr. Roye is VACATED and remanded to the district court for determination of the proper amount to be awarded in accordance with this Order and Judgment. The remainder of the

---

[5] In light of our ruling on this point, we need not address Mr. Bailey and Earp Electric's argument that the amount of attorneys' fees awarded was so high as to be unreasonable and to constitute an abuse of discretion.

district court decisions appealed from are AFFIRMED.

Entered for the Court


Terrence L. O'Brien
Circuit Judge